**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| ELIYAHU WOLF and MIRANDA PHELPS, individually and on behalf of all others similarly situated, | ) ) ) ) | Case No. |
| | ) | CLASS ACTION COMPLAINT |
| Plaintiffs, | ) ) | DEMAND FOR JURY TRIAL |
| v. | ) ) | |
| | ) ) | |
| AMERICAN HONDA MOTOR CO., INC., | ) ) | |
| Defendant. | ) ) | |

## TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................................ 1

II.   JURISDICTION AND VENUE ..................................................................................... 4

III.  PARTIES ......................................................................................................................... 5

   A.   Plaintiffs .................................................................................................................. 5

   B.   Defendant ............................................................................................................... 10

IV.  SUBSTANTIVE ALLEGATIONS ................................................................................ 11

   A.   Honda Has a Long History of Advertising the Safety, Quality, and
        Reliability of Its Vehicles ..................................................................................... 11

   B.   The Class Vehicles Suffer from Oil Dilution, Rendering them Costly, Less
        Valuable, Dangerous, and in Some Instances, Inoperable ................................. 21

   C.   Honda sold Millions of Class Vehicles Suffering from the Engine Defect ..................... 27

   D.   Honda Knew that the Class Vehicles Suffered from the Defect Prior to Its
        Sale of the Class Vehicles .................................................................................... 47

        1.   Honda Conducts Extensive Pre-Sale Durability Testing of the Class
             Vehicles, Putting Honda on Notice of the Defect ........................................ 48

        2.   Consumer Websites and Online Car Forums Complaints Also Put
             Honda on Notice of the Defect .................................................................... 51

        3.   Honda Acknowledged the Defect in Its Own YouTube Videos ................... 54

        4.   Honda Monitors Repairs and Services Under Warranty ............................. 58

        5.   Honda Issued Dealer Messages, Product Updates and Warranty
             Extensions Related to the Engine Defect in 1.5-liter turbo engines ......................... 59

        6.   Honda has recalled vehicles equipped with its 1.5-liter turbo engines
             due to the Engine Defect ............................................................................. 64

        7.   NHTSA Complaints Put Honda on Notice of the Defect ............................. 65

   E.   Honda Breached the Express Warranties Covering the Class Vehicles ........................ 65

V.   TOLLING OF STATUTES OF LIMITATION ................................................................ 67

   A.   Discovery Rule ....................................................................................................... 67

   B.   Fraudulent Concealment ....................................................................................... 68

VI.  CLASS ALLEGATIONS ............................................................................................... 68

VII. CAUSES OF ACTION ................................................................................................... 72

   COUNT I: VIOLATION OF THE MAGNUSON-MOSS WARRANTY
   ACT (15 U.S.C. § 2301, *et seq.*) ........................................................................... 72

   COUNT II: UNJUST ENRICHMENT ......................................................................... 76

   COUNT III: FRAUDULENT CONCEALMENT .......................................................... 77

COUNT IV: BREACH OF EXPRESS WARRANTY .......................................................... 80

COUNT V: BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY ................................................................................................... 83

COUNT VI:  VIOLATION OF THE ILLINOIS CONSUMER FRAUD
AND  DECEPTIVE BUSINESS PRACTICES ACT (815 ILL. COMP.
STAT. 505/1 *et seq.*) ................................................................................................... 85

COUNT VII: BREACH OF EXPRESS WARRANTY (810 ILL. COMP.
STAT. 5/2-313, 810 ILL. COMP. STAT. 5/2A-210) ........................................................... 87

COUNT VIII: BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (810 ILL. COMP. STAT. 5/2-314, 810 ILL. COMP.
STAT. 5/2A-212) ........................................................................................................... 89

COUNT IX:  VIOLATION OF THE MINNESOTA PREVENTION OF
CONSUMER FRAUD ACT (MINN. STAT. § 325F.68-70) ................................................ 92

COUNT X: BREACH OF EXPRESS WARRANTY (MINN. STAT. §
336.2-313) ..................................................................................................................... 94

COUNT XI: BREACH OF IMPLIED WARRANTY OF
MERCHANTIBILITY (MINN. STAT. § 336.2-314) ........................................................ 96

VIII. PRAYER FOR RELIEF ............................................................................................. 98

IX.   DEMAND FOR JURY TRIAL ................................................................................. 99

Plaintiffs Eliyahu Wolf and Miranda Phelps (collectively, "Plaintiffs"), individually and behalf of all others similarly situated, bring this proposed class action against Defendant American Honda Motor Co., Inc. ("Defendant" or "Honda"), based upon their personal knowledge as to facts specific to each of them in an individual capacity, respectively, and based upon the investigation of counsel in all other respects, and allege as follows:

## I.     INTRODUCTION

1.      The Class Vehicles[1] are model years 2019-2023 Honda CR-V, 2019-2022 Honda Civic, and 2018-2022 Honda Accord vehicles equipped with Honda's 1.5-liter turbo direct injection engine.[2] Honda markets its 1.5-liter turbo direct injection engines in a manner to convince customers that they are buying a revolutionary product of the highest quality specifically aimed at power, efficiency, and reliability. But with those promises came a series of problems for Class Vehicle owners that Honda actively concealed.

2.      Honda's 1.5-liter turbo direct injection engine suffers from a latent defect which results in the failure of the vehicles' essential purpose: to run safely. In particular, each of these Class Vehicles was delivered to consumers with an identical and inherent defect in the engine that caused fuel to contaminate and dilute the engine oil ("Engine Defect" or "Defect"), resulting in scores of issues, including unlubricated engine components, reduced engine efficiency, excess engine wear, increased upkeep and repair costs, noxious gasoline fumes, and in the worst cases,

---

[1] Plaintiffs reserve the right to amend their definition of Class Vehicles to include additional Honda vehicles with the same inherent defect.

[2] https://hondanews.com/en-US/honda-automobiles/releases/release-40b876fa88ce36bf41449f6e441f9b95-honda-15-liter-turbo-engine#:~:text=Since%20the%201.5%2Dliter%20Turbo,3%20million%20have%20been%20sold (last visited Oct. 17, 2022).

catastrophic engine failure and stalling while driving.

3. Engine oil lubricates the various components of an engine and is necessary for a vehicle's safe operation. Without a lubricated engine, the multitude of sliding parts of the engine that come together at high speeds to power a vehicle will produce an incredible amount of friction and ultimately lead to premature wear, including failure of the engine bearings and connecting rods.

4. Compounding damage caused by the Engine Defect manifests itself over time, such that it is often only discovered by vehicle owners long after the warranty period expires.

5. As a result of the Defect, Class Vehicle owners are often being required to pay hundreds or thousands of dollars for replacement engine parts, repairs, and frequent oil changes. Worse yet, many are still left with the Defect even after these expensive attempts at repair. This is because none of these repairs address the Defect. These repairs are only temporary fixes to address the symptoms of the Defect. Consequently, the replacement components will ultimately fail as well.

6. Honda knew, and/or was on notice of the fact, that its 1.5-liter turbo engine found in the Class Vehicles is prone to excessive oil dilution and its Class Vehicles suffered from the Engine Defect, even before commencing sales.

7. In October 2018, Honda acknowledged in a letter to its dealerships that its 1.5-liter turbo engines "may experience engine oil dilution" and "may result in increased oil level and can cause a [cylinder] misfire."[3] In December 2018, Honda Canada announced a Product Update and Warranty Extension notice to 2016-2018 Civic vehicles equipped with a 1.5-liter turbo engine

---

[3] Manufacturer Communication Number: ABOM10232018901, dated Oct. 23, 2018, *available at* https://static.nhtsa.gov/odi/tsbs/2018/MC-10147181-9999.pdf (last visited Oct. 17, 2022).

suffering from the Defect. [4] In March 2018, Honda's Chinese affiliate was ordered to stop the sale of 2018 CR-Vs in response to oil dilution problems while it revised its recall plan of 2018 CR-V and 2017 Civic vehicles equipped with a 1.5-liter turbo engine. [5] The 1.5-liter turbo engines found in the Class Vehicles are identical and/or substantially similar in design and manufacture as the 1.5-liter turbo engines installed in prior model years – each of which suffers from the same Engine Defect.

8. But Honda has yet to offer a reliable solution to the Defect or recall the Class Vehicles. Instead, Honda has largely only instructed consumers to obtain more frequent oil changes and drive the Class Vehicles for longer periods of time in warmer weather. Neither corrective action remedies the Engine Defect, nor does it make the vehicles any more dependable for their owners.

9. Although Honda has long been aware of the Defect, Honda actively concealed the fact that the Class Vehicles' engines were defective (and require expensive repairs to fix), and it did not reveal that the existence of this defect would diminish the intrinsic and resale value of the Class Vehicles. Instead, Honda has attempted to place the blame on drivers, claiming the Defect is a result of drivers not driving their vehicles for long enough periods, or for driving in cold weather. These are not the causes of the Engine Defect.

10. If Plaintiffs and/or other Class members knew of the Defect at the time of purchase

---

[4] Product Update and Warranty Extension campaigns: Engine Oil Dilution, dated December 2018, *available at* https://www.honda.ca/content/honda.ca/recallcampaigndocuments/N66_EN.pdf (last visited Oct. 17, 2022).

[5] https://www.reuters.com/article/us-honda-china-recall/honda-stops-selling-new-cr-vs-in-china-after-recall-plan-rejected-idUSKCN1GE1P8 (last visited Oct. 17, 2022); https://www.fuelsandlubes.com/chinas-dongfeng-honda-automobile-to-issue-recall-due-to-lubricant-related-issues/; https://www.yicaiglobal.com/news/dongfeng-honda-suspends-sales-after-warning-from-quality-regulator (last visited Oct. 17, 2022).

or lease, they would not have bought or leased the Class Vehicle or would have paid substantially less for it. Plaintiffs and other Class members were denied the benefit of the bargain in connection with their purchases and/or leasing of the Class Vehicles.

11.     The conduct described herein makes Defendant liable for, among other things, breach of express and implied warranties, unjust enrichment, and misleading, false, and/or fraudulent practices pursuant to Minnesota consumer protection law. In turn, owners and/or lessees of the Class Vehicles, including Plaintiffs, have suffered an ascertainable loss of money and/or property and/or loss in value. The fraudulent and deceptive practices committed by Honda caused Plaintiffs and the members of the Class damages, including, but not limited to, loss of value, loss of use of the vehicles, engine oil replacement, engine replacement, and other repair costs.

12.     Accordingly, Plaintiff brings this action to redress Honda's misconduct. Plaintiffs seek recovery of damages and a repair under a state consumer protection statute and applicable express and implied warranties, and reimbursement of all expenses associated with the repair or replacement of the Class Vehicles.

## II.     JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§1332(d)(2) and (6), because: (a) there are 100 or more class members; (b) there is an aggregate amount in controversy exceeding $5,000,000.00 exclusive of interest and costs; and (c) there is minimal diversity because at least one Plaintiff and one defendant are citizens of different states. This Court also has federal question subject matter jurisdiction under 28 U.S.C. § 1331 because this case includes a claim under federal law (15 U.S.C. § 2301, *et seq*.). This Court also has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

14.     Venue is proper in this judicial district under 28 U.S.C. §1391 because Defendant

4

transacts substantial business in this district. Honda advertised in this District and received substantial revenue and profits from sales and/or leases of the Class Vehicles in this District. Furthermore, Plaintiff Wolf purchased his Class Vehicle at issue in this District. Therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this District.

15.     This Court has personal jurisdiction over Honda by virtue of its transactions and business conducted in this Judicial District. Honda has transacted and done business, and violated statutory and common law in the State of Illinois and in this District.

### III.     PARTIES

**A.  Plaintiffs**

**1.  Eliyahu Wolf**

16.     Plaintiff Eliyahu Wolf is a citizen of Illinois and resides in Chicago, Illinois. In or around May 20, 2020, Plaintiff Wolf purchased a new 2020 Honda Civic equipped with a 1.5-liter turbo engine, from Muller Honda, located at 550 Skokie Valley Rd., Highland Park, IL 60035.

17.     Muller Honda is part of Honda's network of authorized dealers across the United States. Honda features Muller Honda on its website as an authorized Honda dealer, with links to lists of inventories of Honda vehicles.[6]

18.     Plaintiff Wolf has brought his Class Vehicle to Muller Honda for routine oil changes and maintenance two times since his purchase of the vehicle. Plaintiff Wolf also brought his Class Vehicle into North City Honda, an authorized Honda dealer, located at 6600 N Western Ave, Chicago, IL 60645, on two occasions for maintenance. At each visit, he was told by Honda

---

[6] *See* https://owners.honda.com/service-maintenance/dealer-search (last visited Oct. 17, 2022).

employees that his Class Vehicle had no problems, and it was working fine.

19.　　When shopping for his Class Vehicle, Plaintiff Wolf researched and considered the reliability and quality of the make and manufacturer and he was familiar with Honda's representations about Honda's vehicle quality, safety, and warranties.

20.　　Prior to purchasing his Class Vehicle, Plaintiff Wolf was aware of and/or reviewed Honda's promotional materials on the internet and/or at Muller Honda, saw stickers the dealer placed on the vehicle, and interacted with Honda sales agents at Muller Honda. Each of those information sources failed to disclose the presence of the Defect in his 2020 Honda Civic or the other Class Vehicles.

21.　　Through his exposure and interaction with Honda, Plaintiff Wolf was aware of Honda's uniform and nationwide marketing message that its vehicles are safe and dependable, which was material to his decision to purchase his Class Vehicle. When he purchased the vehicle, he believed that, based on Honda's marketing message, he would be in a safe and dependable vehicle, one that is safer than a vehicle that is not marketed as safe and dependable. At no point before Plaintiff Wolf purchased his vehicle did Honda disclose to him that his vehicle was not safe or dependable, or that it suffered from the Engine Defect, which creates safety risks and renders the vehicle significantly less valuable, and in some instances, completely useless.

22.　　Because Plaintiff Wolf's vehicle contains the 1.5-liter turbo direct injection engines with the Defect, Plaintiff Wolf does not have a vehicle that is safe or reliable as advertised by Honda.

23.　　Plaintiff Wolf purchased his Class Vehicle with the Engine Defect as part of a transaction in which Honda did not disclose material facts related to the automobile's essential purpose – safe and dependable transportation. Plaintiff Wolf did not receive the benefit of his

6

bargain. He purchased a vehicle that is of a lesser standard, grade, and quality than represented, and he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding safe and reliable operation. The Engine Defect has significantly diminished the value of Plaintiff Wolf's vehicle.

24.     Had Honda disclosed the Defect, Plaintiff Wolf would not have purchased his Class Vehicle, or would have paid less to do so.

25.     Plaintiff Wolf would purchase another Honda from Honda in the future if Defendant's representations about the vehicle, including its safety and durability, were accurate.

### 2. Miranda Phelps

26.     Plaintiff Miranda Phelps is a citizen of Iowa and resides in Titonka, Iowa. In or around March 2021, Plaintiff Phelps purchased a new 2021 Honda CR-V with a 1.5-liter turbo direct injection engine, from Luther Mankato Honda, located at 308 Raintree Rd., Mankato, MN 56001.

27.     Luther Mankato Honda is part of Honda's network of authorized dealers across the United States. Honda features Luther Mankato Honda on its website as an authorized Honda dealer, with links to lists of inventories of Honda vehicles.[7]

28.     When shopping for her Class Vehicle, Plaintiff Phelps researched and considered the reliability and quality of the make and manufacturer, and has purchased Hondas in the past, so Plaintiff Phelps was familiar with Honda's representations about Honda's vehicle quality, safety, and warranties.

29.     Prior to purchasing her Class Vehicle, Plaintiff Phelps was aware of and/or reviewed Honda's promotional materials on the internet and/or at Luther Mankato Honda, saw

[7]   *See id.*

stickers the dealer placed on the vehicle, and interacted with Honda sales agents at Luther Mankato Honda. Each of those information sources failed to disclose the presence of the Defect in her 2021 Honda CR-V or the other Class Vehicles.

30. Through her exposure and interaction with Honda, Plaintiff Phelps was aware of Honda's uniform and nationwide marketing message that its vehicles are safe and dependable, which was material to her decision to purchase her Class Vehicle. When she purchased the vehicle, she believed that, based on Honda's marketing message, she would be in a safe and dependable vehicle, one that is safer than a vehicle that is not marketed as safe and dependable. At no point before Plaintiff Phelps purchased her vehicle did Honda disclose to her that her vehicle was not safe or dependable, or that it suffered from the Engine Defect, which creates safety risks and renders the vehicle significantly less valuable, and in some instances, completely useless.

31. After purchasing the vehicle, Plaintiff Phelps experienced issues with her Class Vehicle as a result of the Defect. First, on or about January 26, 2022, the check engine light illuminated, indicating an emissions system problem. Plaintiff Phelps also smelled strong exhaust outside of the vehicle. Ms. Phelps brought her vehicle to a non-Honda service shop and technicians cleared the light.

32. On or about February 17, 2022, Ms. Phelps' vehicle went into "limp mode" while she was driving to work and began emitting smoke. "Limp mode" occurs when a car's electronic control unit senses something drastically wrong with the transmission or engine. She had her vehicle towed to Hosmer Honda in Mason City, Iowa, an authorized Honda dealership,[8] where technicians found fuel in the vehicle oil. Technicians inspected the vehicle for the source of the problem, reportedly found no other issues, changed the oil, and tried to burn the excess fuel out of

---

[8] https://www.hosmerhonda.com/ (last visited Oct. 24, 2022).

the engine system.

33. On or about March 19, 2022, Ms. Phelps experienced the same "limp mode" issue while driving 75-80 miles per hour on the interstate. Ms. Phelps was three hours from home and had her vehicle towed to Smart Honda of Des Moines, an authorized Honda dealership.[9] Technicians performed a cylinder test and "all injectors passed," performed a software update, ensured that the "engine no longer [misfires]," and test drove to confirm "all is well."

34. A little over a week later, on March 28, 2022, Ms. Phelps' vehicle again went into "limp mode," while she was on her way to work. She had the vehicle towed to Hosmer Honda. Service notes from this visit indicate that the vehicle's oil level was "2 inches too high on stick." The technician replaced the fuel injectors and changed the oil, noting the presence of "excessive fuel in oil."

35. On April 18, 2022, Ms. Phelps noticed a noxious fuel smell coming from her vehicle and preemptively brought it to Hosmer Honda. Technicians confirmed the oil level was "about 1 inch[ ] above specs," and "smell[ed] like gas." The technician ordered a new high pressure fuel pump, drained all oil from the vehicle, and replaced it with fresh oil.

36. Ms. Phelps visited Hosmer Honda again on May 3, 2022 out of concern that there was excessive oil in her fuel. Technicians confirmed this and replaced the high pressure fuel pump. The oil was drained again and replaced with fresh oil.

37. Plaintiff Phelps does not have a vehicle that is safe or reliable as advertised by Honda.

38. Plaintiff Phelps purchased her Class Vehicle with the Engine Defect as part of a

---

[9] https://www.smarthondadesmoines.com/ (list visited Oct. 17, 2022); *see also* https://automobiles.honda.com/tools/dealership-locator (list visited Oct. 17, 2022).

transaction in which Honda did not disclose material facts related to the automobile's essential purpose – safe and dependable transportation. Plaintiff Phelps did not receive the benefit of her bargain. She purchased a vehicle that is of a lesser standard, grade, and quality than represented, and she did not receive a vehicle that met ordinary and reasonable consumer expectations regarding safe and reliable operation. She has suffered out-of-pocket loss associated with the Engine Defect, as well as future attempted repairs and diminished value of her Class Vehicle.

39.     Had Honda disclosed the Defect, Plaintiff Phelps would not have purchased her Class Vehicle, or would have paid less to do so.

40.     Plaintiff Phelps would purchase another Honda from Honda in the future if Defendant's representations about the vehicle, including its safety and durability, were accurate.

## B. Defendant

41.     Defendant American Honda Motor Company, Inc. is incorporated in California with its principal place of business in Torrance, California. Honda is the wholly owned subsidiary in North America of Honda Motor Company Limited ("HML"), a Japanese corporation.

42.     Honda is a holding company of sales, manufacturing, engineering, design, and research and development strategies of HML in the United States. Honda is in the business of designing, engineering, testing, validating, manufacturing, distributing, marketing, selling, and servicing Honda- and Acura-branded vehicles in the United States through its hundreds of dealerships.

43.     Honda began its U.S. operations in Los Angeles, California in 1959 by selling motorcycles. In 1969, Defendant began marketing and selling automobiles, with its operations still centered in California.

44.     By 1991, Honda added production to its U.S. operations and oversaw all aspects of production, including research and development, from its headquarters in California.  In 1986,

Honda launched Acura, its luxury line of vehicles for the U.S. market. By 2012, Honda established research and development facilities dedicated to the Class Vehicles in Torrance, California, with related facilities dedicated solely to the creation of "future Honda and Acura automobile and mobility design concepts" in downtown Los Angeles, California.[10]

45.     Honda is now responsible for "[s]ales, marketing, service, distribution, import and export of Honda and Acura products in the U.S."[11]

46.     Honda Development & Manufacturing of America, LLC and Honda R&D Americas, LLC are affiliated with Honda, and operate 19 major manufacturing plants in North America and 14 major research and development centers in North America which jointly fully design, develop, and engineer many of the products the company makes in North America.

47.     Upon information and belief, Honda develops the owner's manuals, warranty booklets and information included in maintenance recommendations and/or schedules for the Class Vehicles.

48.     Honda engages in continuous and substantial business in Illinois and maintains many dealerships and technicians in the state that are tasked with selling, repairing, and maintaining the Class Vehicles in the states.

## IV.     SUBSTANTIVE ALLEGATIONS

### A.     Honda Has a Long History of Advertising the Safety, Quality, and Reliability of Its Vehicles

49.     Honda has operated in the United States since 1959, manufacturing and selling

---

[10] https://www.automotiveworld.com/news-releases/honda-rd-americas-opens-new-advanced-design-studio-in-downtown-los-angeles/ (last visited Oct. 17, 2022).

[11] https://hondanews.com/en-US/honda-corporate/releases/release-554e3d8539c7f6db3b88b571930280ab-honda-2020-digital-factbook (last visited Oct. 17, 2022).

passenger cars such as the Accord and Civic, and light trucks such as the CR-V, since 1976, 1972, and 1997, respectively.

50.     Currently in its tenth generation, the Honda Accord underwent major changes in 2017 and Model Year 2018-2022 Accords now come standard with the 1.5-liter Turbocharged engine, depending on trim level.

51.     Since 2015, the tenth-generation Civic sedan has been sold by Honda. Model Year 2016-2022 Civics come equipped with the 1.5-liter Turbocharged engine, depending on trim level.

52.     In 2017, Honda introduced its fifth generation CR-V. Its Model Year 2017-2023 CR-Vs contain the 1.5-liter turbocharged engine, depending on trim level.

53.     Through its network of over 1,000 dealerships across the United States,[12] Honda has become one of the top automakers in the United States in terms of sales.

54.     In 2020 and 2021, Honda sold 1.34 million and 1.46 million vehicles, respectively.[13]

55.     In 2021, 95% of the Honda and Acura automobiles sold in the United States were produced in North America.[14]

56.     A 2019 McKinsey & Company report noted that over twice as many second-owner used vehicles are sold in the United States each year compared to new vehicles.[15]

---

[12] https://hondanews.com/en-US/honda-automobiles/releases/release-4be8cbb0bfe64f9daefc3d10829d0da7-honda-celebrates-25-years-of-odyssey-with-25th-anniversary-accessory-package-and-10-speed-automatic-transmission-for-all-trims (last visited Oct. 17, 2022).

[13] https://www.best-selling-cars.com/usa/2021-full-year-usa-honda-and-acura-sales-by-model/#:~:text=Honda%20Brand%20Sales%20in%20the,top%2Dselling%20Honda%20car%20model (last visited Oct. 17, 2022).

[14] *Id.*

[15] Ben Ellencweig, *et al.*, *Dealers, investors, and disruptors can up their games to cater to*

57.     The Accord has been Honda's third bestselling vehicle, selling over 199,000 vehicles and over 202,000 vehicles in 2020 and 2021, respectively. The Civic sold over 261,000 vehicles and over 263,000 vehicles in 2020 and 2021, respectively. The CR-V has been Honda's best-selling vehicle in the United States, selling over 333,000 vehicles in 2020, and over 361,000 vehicles in 2021.[16]

58.     Honda has metamorphosed into such a large player in the United States auto-market based on its assurances to consumers of care, durability, and quality. Consistent with its marketing and public statements, Honda falsely represents its vehicles as safe and dependable so that consumers can rely upon the build and quality of the vehicles for daily use.

59.     Honda dedicates a page on its website entitled "safety," where Honda represents the safety of its vehicles.[17] Therein, Honda states that it conducts "3D Model Testing," and touts that it has "developed an advanced safety visualization technology to create highly detailed three-dimensional models of a vehicle's crash safety structure." Further, Honda states that "[f]or 50 years, Honda has built some of the most-praised vehicles on the road – and some of the safest," linking to a webpage listing Honda's lineup of awards.[18]

60.     Honda further represents that it conducts "Virtual & Real-World Tests[,]" and touts that it has "developed two of the world's most advanced crash-test facilities – including the largest ever built and first to allow multi-directional crashes." Honda states that it also "dreamt bigger to

---

*digitally savvy used-car consumers* (June 6, 2019), https://www.mckinsey.com/industries/automotive-and-assembly/our-insights/used-cars-new-platforms-accelerating-sales-in-a-digitally-disrupted-market# (last visited Oct. 17, 2022).

[16] *Id*.

[17] https://www.honda.com/safety (last visited Oct. 17, 2022).

[18] *Id*.

create some of the most advanced virtual crash tests in the world. All this combines to make safer roads for everyone."[19]

61.     Notwithstanding the presence of the Defect in millions of Class Vehicles which prevents drivers from safely driving their cars, free of the threat of oil dilution and resulting engine problems, Honda calls itself "a mobility company–we move people. But, for us, safety is an enormous priority. We don't just want to move you; we want to move you safely."[20]

62.     Honda claims that the safety testing procedures it utilizes "allows [it] to make the road safer for everybody on it by engineering for worst case scenarios in an unprecedented way."[21]

63.     A "rugged" webpage on Honda's website represents that Honda conducts "COLD-WEATHER TESTING[,]" including "on 23 different driving courses in the frozen prairies of Northern Minnesota" and in "-40-degree cold cells."[22] Honda additionally states that it "test[s] everything" at "the Honda Proving Center of California, spanning 3,840 acres of sun-scorched desert."[23]

64.     Honda's website has a section devoted to safety, called "Safety For Everyone."[24] Therein, it includes promotional videos touting the pre-sale safety testing it conducts. For example, the webpage includes a video interview with Bryan Hourt, Chief Engineer for North America Safety Strategy and Planning, in which he touts the various pre-sale tests that Honda conducts and

---

[19] *Id.*

[20] https://www.honda.com/safety/virtual-and-real-world-tests (last visited Oct. 17, 2022).

[21] *Id.*

[22] https://automobiles.honda.com/rugged (last visited Oct. 17, 2022).

[23] *Id.*

[24] https://hondanews.com/en-US/safety (last visited Sept. 20, 2022).

its "development of core safety technologies."[25]

65.     Honda's YouTube channel similarly displays a commercial titled "Each Honda is engineered with Safety for Everyone in mind," dated January 8, 2021.[26] In the commercial, Honda's Manager/Principal Engineer of Crash Safety touts Honda's "safety for everyone philosophy." The video description reads, "[f]rom our own family members to yours, safety is a top priority when engineering our vehicles. When you or your loved ones get behind the wheel of a Honda, you're driving a vehicle that's been designed with Safety for Everyone in mind." A screenshot of the advertisement is included below.



_____

[25] https://hondanews.com/en-US/safety/channels/channel-ca54ead83e3667d0b2045585b001b6d4?sortOrder=PublishedAscending&selectedTabId=channel-ca54ead83e3667d0b2045585b001b6d4-videos&modal=video-37608fb76eaa9e3e3e588b6f5d00d80d (last visited Sept. 20, 2022).

[26] https://www.youtube.com/watch?v=t5VltkR4J_w (last visited Oct. 17, 2022).

66.     The consistently uniform marketing message from Honda concerning the reliability of its vehicles is also found in Honda's marketing brochures for the Class Vehicles. Featured prominently in Honda's marketing materials are claims of excellence in quality, design, safety, and reliability.

67.     On information and belief, Honda requires its marketing brochures to be provided to prospective customers at its network of dealerships.

68.     Honda marketed 2020 CR-Vs as "delivering a wealth of standard features and conveniences, all backed by the Honda Sensing® suite of safety and driver-assistive technologies[.]"[27]

69.     Advertised by Honda as "comfortable, secure[,]" and "impressive[,]" Honda touts the "1.5-liter, turbocharged and intercooled engine" found in 2022 Civic vehicles.[28] Honda further claimed the 2021 Civic had "advanced engineering[,]" and noted the vehicle's "1.5-liter, turbocharged and intercooled engine[.]"[29] An excerpt of the 2021 Honda Civic advertisement follows:

---

[27] https://cdn.dealereprocess.org/cdn/brochures/honda/2020-crv.pdf, p. 6 (last visited Oct. 17, 2022).

[28] https://cdn.dealereprocess.org/cdn/brochures/honda/2022-civic.pdf, pp. 2-3 (last visited Oct. 17, 2022).

[29] https://dealerinspire-brochure.s3.amazonaws.com/2021.pdf, p. 8 (last visited Oct. 17, 2022).



70.     Honda makes similar claims throughout its brochures for the 2019 Civic, stating the vehicle is "[p]acked with cutting-edge technology[,]" including the "1.5-liter, turbocharged" engine.[30]

71.     In the brochure for Honda's model year 2021 vehicles, Honda states the Accord is "[t]he most impressive Honda ever," with "more advanced features than ever," including "the latest technology."[31] In a 2022 Honda Accord brochure, Honda emphasized its "dedicat[ion] to identifying and implementing advanced designs and features that help enhance the safety of drivers

---

[30] https://cdn.dealereprocess.org/cdn/brochures/honda/2019-civic.pdf, pp. 6-7 (last visited Oct. 17, 2022).

[31] https://dealerinspire-brochure.s3.amazonaws.com/2021.pdf, pp. 2-3 (last visited Oct. 10, 2022).

and passengers[.]"[32] Honda's 2018 brochure for the Accord makes similar claims, describing the "1.5-liter . . . turbocharged engine[ ]" as "[f]ast forward thinking," and the vehicle as "[a]t the forefront of safety."[33] The 2018 Accord brochure is copied below:



72.     In addition, Honda stated that its 2021 Civic is "[a]n extraordinary ride . . . culminating in a driving experience not soon forgotten" because of its "advanced engineering[,]" and "suite of safety and driver-assistive features[.]" In light of all these purported safety features and attention to detail, Honda promises its drivers "[c]onfidence on the road."[34]

73.     In its brochure for the 2018 Accord, Honda states that the vehicle is "[t]he most impressive Honda ever":[35]

---

https://cdn.dealerprocess.org/cdn/brochures/honda/2022-accord.pdf, p. 10 (last visited Oct. 11, 2022).

[33] https://cdn.dealerprocess.org/cdn/brochures/honda/2018-accord.pdf, p. 8, 11 (last visited Oct. 11, 2022).

[34] https://cdn.dealerprocess.org/cdn/brochures/honda/2019-civic.pdf, pp. 7, 14 (last visited Oct. 17, 2022).

[35] https://pictures.dealer.com/rivertownhonda/8b4ec4800a0e0ca37432ffaa8919ba2f.pdf (last visited Oct. 17, 2022).



74. Additional representations about reliability-related topics include affirmative promises that the vehicle was "[b]uilt for what-if" and is "[a]t the forefront of safety."[36]

75. The 2021 Civic was promoted by Honda as a reliable vehicle with the slogan "Enhance Every Day[,]" "MONDAY" through "SUNDAY[,] [p]eace of mind, from here to everywhere":[37]



---

[36] *Id.*

[37] https://web.archive.org/web/20190218165632if_/https://automobiles.honda.com/cr-v#features (last visited Sept. 18, 2022).



76.    Similarly, in a January 2020 tweet, Honda spotlighted the "impressive safety features" of its 2020 Honda Civic:[38]



_____

[38] @Honda Twitter page, https://twitter.com/Honda/status/1220028478675980288 (last visited Oct. 17, 2022).

**B. The Class Vehicles Suffer from Oil Dilution, Rendering them Costly, Less Valuable, Dangerous, and in Some Instances, Inoperable**

77. The Engine Defect is a direct consequence of an alleged "technological advancement" that Honda introduced into its U.S. vehicles starting with its 2013 models: gasoline direct injection technology ("GDI"). Marketed as 1.5-liter turbo engines, Honda advertised GDI as "greatly enhance[ing] both driving performance and fuel efficiency," however, it did neither.[39]

78. The following vehicles contain Honda's 1.5-liter GDI turbo engines, which are identical and/or substantially similar in design and manufacture: model years 2017-2023 Honda CR-V, 2016-2022 Honda Civic, and 2018-2022 Honda Accord.[40] In an August 8, 2022 press release, titled: "Honda 1.5-Liter Turbo Engine," Honda states that it "has sold more than 3 million cars and light trucks in the U.S. powered by this engine since 2016."[41]

\*　　\*　　\*

79. Internal combustion engines work by sucking a mixture of gasoline and air into a cylinder, compressing it with a piston, and igniting it with a spark. This is known as the Combustion Cycle. The resulting explosion rotates the crankshaft, a mechanical component that converts motion from the piston into a rotational motion, ultimately driving the vehicle's wheels.

80. Traditional (i.e., non-direct) fuel injection systems pre-mix the gasoline and air in a chamber just outside the cylinder. Below is a diagram of a traditional four-stroke combustion cycle:

---

[39] https://hondanews.com/en-US/releases/honda-plants-start-producing-earth-dreams-engines-transmissions-for-all-new-2013-honda-accord#:~:text=16%2C%202012%20%E2%80%93%20Honda's%20engine%20and,at%20Honda 's%20auto%20plant%20in (last visited Oct. 17, 2022).

[40] *See supra* n.2.

[41] *Id*.



81.     Engine oil, sometimes called motor oil or engine lubricant, is essential for an engine to function properly. There are many moving parts in an engine and engine oil helps the engine run smoothly, avoid premature wear, cool the engine by carrying away heat from the moving parts, and to clean and transport dirt and debris away from components.

82.     The foundation of the engine's oil lubrication system is the oil pan at the bottom of the crankcase. The oil pan holds the engine's oil reservoir, which is used to pump oil throughout the engine. Pumping engine oil through the engine's moving parts ensures that it is lubricated, cleaned, and cooled. Below is a diagram of an engine's oil lubrication system:[42]



83.     As described above, the Combustion Cycle turns the explosion in the cylinder into movement of the wheels using two crucial components: connecting rods and bearings. A connecting rod is the connection between the engine's piston and a crankshaft. Its purpose is to convert the linear, up-and-down motion of the piston into the rotary motion of the crankshaft, which is accomplished as the crankshaft rotates many thousands of times per minute within each connecting rod, as depicted in the following diagram:

---

[42] https://puredieselpower.com/blog/diesel-engine-oil-pan (last visited Oct. 7, 2022).



84.    Because the connecting rods carry the force from the piston to the crankshaft, they are constantly subjected to stretching and other forces as they act as the intermediary in this push-pull relationship. The connecting rods, therefore, need to be structurally strong, well lubricated, and protected from corrosion. Engine bearings are metal sleeves encircling the rotating components of the engine, including the connection rods, and serve these purposes.

85.    Engine bearings reduce metal-on-metal friction by holding the rotating connecting rods in place on top of a thin layer of oil, which creates a protective buffer between the crankshaft and the connecting rod.

86.    Without sufficient lubrication of the bearings, both the connecting rods and the crankshaft quickly succumb to friction-related damage. If the oil is diluted with fuel, as is the case with the Class Vehicles, a bevy of engine problems will occur.

87.     In a GDI engine, as found in the Class Vehicles, air and gasoline are not pre-mixed before entering the combustion chamber for ignition. Instead, gasoline is injected directly into the cylinder. A diagram of the typical GDI engine is below.



88.     The fuel sprayed directly into the combustion chamber in a GDI engine is high-pressurized fuel, which causes unburned fuel to stick to the cylinder wall. The unburned fuel then gets scraped by the piston ring during the third stage of the Combustion Cycle and travels down into the crankshaft area, ultimately dropping to the crankcase and mixing with the engine oil. The mixture of air, unburned fuel, and engine oil is known as "blow-by."

89.     When engine oil is mixed and diluted with fuel, the oil loses its lubricating properties and does not sufficiently coat the engine components that it is designed to protect.

90.     Blow-by is not a common issue in vehicles with non-GDI engines as the gasoline is injected prior to reaching the intake valve, so it is unlikely that fuel will stick to the cylinder walls, and then travel down to the crankcase. While minor levels of blow-by may be expected in vehicles, especially those with extensive driving histories, the Class Vehicles experience excessive amounts of blow-by, which is not common.

91.     The excessive amount of blow-by is a direct result of Honda's design of the engine.

While engines typically vaporize and burn off excess fuel from the contaminated oil, the Class Vehicles' GDI engine was designed to be more efficient and produce less heat. The problem with this design is that heat is necessary to burn off such excess fuel. Consequently, gasoline is shot deep inside the GDI engine's cylinder and ignited at colder temperatures than most engines.

92.     Honda spokesman Chris Martin acknowledged the inherent Defect, stating that the Class Vehicles' cooling system is designed to be highly efficient, and therefore the engine is slow to reach a normal operating temperature that would cause fuel to readily evaporate and be routed back to the combustion chamber via the crankcase ventilation system.[43]

93.     As a result of the Engine Defect, Class Vehicles suffer from reduced engine efficiency, reduced gas mileage, premature vehicle wear, excessive blow-by, engine misfires, loss of power, noxious gasoline fumes, engine overheating, and damage to engine parts, among other consequences. Such failures can also result in stalling events and other dangerous engine failures for Class Vehicle occupants and other drivers on the road.

94.     Class Vehicle owners are often being required to pay hundreds or thousands of dollars for diagnostic testing, towing expenses, engine component replacements and repairs, and more frequent oil changes. This results in a previously undisclosed increase in the cost of maintenance for Class members due to the Defect.

95.     Moreover, the expenses Class members incur to repair and upkeep their engines are merely band-aid solutions. Class members are still left with the Engine Defect even after these expensive attempts at repair. This is because replacing prematurely worn engine parts and contaminated oil as a result of the Defect are only temporary fixes; the replacements will ultimately

---

[43] https://www.wardsauto.com/engines/honda-15l-engine-suffers-cold-weather-oil-dilution-problem (last visited Oct 17, 2022).

fail as well.

**C. Honda sold Millions of Class Vehicles Suffering from the Engine Defect**

96. Honda, upon information and belief based on the facts alleged herein, has knowingly sold millions of Class Vehicles in the United States equipped with the 1.5-liter turbo engine which suffer from a serious Engine Defect.[44] Due to the long-term, compounding nature of this Defect, it is possible that drivers will not realize the damage until it is too late, creating an unknowable and unreasonable risk to each driver.

97. Scores of complaints submitted to the NHTSA reveal the prevalence of the Engine Defect in vehicles equipped with Honda's 1.5-liter turbo direct injection engine, including the Class Vehicles, and the magnitude of the Defect's impact on consumers.

98. A list of representative complaints filed with the NHTSA detailing the Engine Defect found in the Honda CR-V includes:[45]

- 2021 Honda CR-V. NHTSA ID No. 11402938 (dated 03/14/2021) ("OIL LEVEL RAISED UP TO ABOVE THE UPPER MARK ON DIP STICK AND SMELL GASOLINE. THIS VEHICLE HAS BEEN OFF AND SITTING MORE THAN A FEW HOURS ON LEVEL GROUND.").

- 2020 Honda CR-V. NHTSA ID No. 11377796 (dated 12/03/2020) ("THE CONTACT OWNS A 2020 HONDA CR-V. THE VEHICLE BEGAN TO EMIT A FUEL LIKE ODOR INSIDE THE VEHICLE. THE FAILURE ONLY OCCURRED WHILE THE VEHICLE SAT IDLE. THE VEHICLE WAS TAKEN TO URSE HONDA (772 BARNETTS RUN RD, BRIDGEPORT, WV 26330; (304) 842-5600) WHO STATED THEY WERE UNABLE TO RECREATE THE FAILURE AND THEREFORE WERE NOT ABLE TO DIAGNOSE THE

---

[44] *See* https://hondanews.com/en-US/honda-automobiles/releases/release-40b876fa88ce36bf41449f6e441f9b95-honda-15-liter-turbo-engine#:~:text=Since%20the%201.5%2Dliter%20Turbo,3%20million%20have%20been%20sold (last visited Oct. 17, 2022).

[45] NHTSA complaints are publicly available online and searchable by NHTSA ID Number at https://www.nhtsa.gov/recalls. All capitalization, typographical errors, and grammatical errors are original, unless stated otherwise.

VEHICLE. THE FAILURE RECURRED. THE CONTACT HAD TAKEN THE VEHICLE TO THE SAME DEALER THREE TIMES HOWEVER, THE INSPECTION RESULTS WERE THE SAME. THE VEHICLE HAD NOT BEEN REPAIRED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE AND SUGGESTED THE CONTACT GO TO ANOTHER DEALER FOR A SECOND OPINION. THE APPROXIMATE FAILURE MILEAGE WAS 2,000.").

- 2020 Honda CR-V. NHTSA ID No. 1137389 (dated 11/09/2020) ("THE CABIN OF MY CRV SMELLS NAUSEATINGLY LIKE GASOLINE CAUSING SEVERE HEADACHES. IT HAPPENS WHILE THE ENGINE IS RUNNING AT LOW AND HIGH SPEEDS, AND ALSO WHEN THE ENGINE IS NOT RUNNING. MY VEHICLE HAS LESS THAN 4000 MILES ON IT. I THOUGHT THIS PROBLEM WAS FIXED IN THE 2020 MODELS.").

- 2020 Honda CR-V. NHTSA ID No. 11419506 (dated 06/03/2021) ("had the very first oil change for my new 2020 Honda CRV at approx 6200 miles and was told there was gasoline mixed in with my oil. the shop brought out a sample and you could smell the gas. took to a Honda dealer and they did not find any problems. oil change was NOT done at a Honda dealer. was told by the shop that performed oil change that they have seen this problem with other Honda motors").

- 2020 Honda CR-V. NHTSA ID No. 11318160 (dated 03/15/2020) ("I AM EXPERIENCING THE ENGINE OIL DILUTION PROBLEM. I HAD THE OIL CHANGED AFTER LESS THAN 2000 MILES DRIVEN BECAUSE IT LOOKED LIKE SPENT OIL (DARK AND CLOUDY) AND SMELLED HEAVILY OF GASOLINE. TECHNICIANS AT HONDA ADVISED THAT I KEEP GETTING THE OIL CHANGED REGULARLY, BUT THAT THERE WAS NO FIX THAT THEY COULD MAKE TO THE OIL DILUTION PROBLEM.").

- 2020 Honda CR-V. NHTSA ID No. 11394304 (dated 02/02/2021) ("CRANKCASE FUEL/OIL DILUTION PROBLEM ON HONDA 1.5L DIRECT FUEL INJECTED, TURBO ENGINE. UPON THE FIRST OIL CHANGE ON OUR 2020 HONDA CR-V EXL AT ABOUT 6300 MILES WE FOUND THE OIL LEVEL IN THE CRANKCASE TO BE OVERFULL BY APPROXIMATELY 1 PINT. THE OIL SMELLED FAINTLY OF GASOLINE AND APPEARED THINNER THAN NORMAL. SEE ATTACHED PICTURE. WE LIVE IN A TOWN OF 22,000. MOST TRIPS AROUND TOWN ARE 2 MILES EACH WAY AT MOST, WHICH ACCORDING TO HONDA IS PART OF THE PROBLEM AS THE ENGINE DOES NOT RUN AT NORMAL OPERATING TEMPERATURE LONG ENOUGH TO EVAPORATE FUEL IN THE CRANKCASE. WE DO TAKE OCCASIONAL TRIPS OF AN HOUR OR MORE EACH DIRECTION. HONDA SAYS THIS PROBLEM IS MADE WORSE BY COLD CLIMATES, HOWEVER, OUR WINTER WHERE WE LIVE HAD BEEN VERY MILD COMPARED TO MOST WINTERS WHEN OUR OIL WAS CHANGED. MOST DAYS THE OUTSIDE AIR TEMP HAD

BEEN IN THE 30'S TO LOW 40'S. I'VE BEEN TOLD BY MY HONDA DEALER'S SERVICE MANAGER THIS IS A COMMON PROBLEM AND HONDA HAS NO FIX FOR THIS PROBLEM. I AM CONCERNED ABOUT HAVING PROPER OIL VISCOSITY. IF THE OIL LEVEL IN OUR HONDA ENGINE CRANKCASE WAS A PINT OVER FULL, THAT WOULD BE EQUIVALENT TO A 13% FUEL CONTENT SINCE THE ENGINE ONLY HOLDS 3.7 QUARTS OF OIL. THAT SEEMS EXCESSIVE AND VISCOSITY HAS TO SUFFER ALLOWING EXCESSIVE ENGINE WEAR. HONDA SAYS IT WILL BE FINE. I HAVE WRITTEN TO HONDA CORP. ABOUT THIS PROBLEM AND HAVE NOT RECEIVED A REPLY.").

- 2020 Honda Cr-V NHTSA ID No. 11397190 (dated 02/21/2021) ("I USE MY VEHICLE REGULARLY ONCE A DAY O[R] MAYBE TWICE, SHORT RIDES, SOMETIMES HIGHWAYS SHORT TIME 1H TOTAL IN A DAY. THE CAR IS ASKING ME A CHANGE OIL VERY OFTEN, AROUND 1500 MILES WHEN THE REGULAR IS 3-5K I ASKED ANOTHER DRIVERS AND THEY HAVE THE SAME PROBLEM. COULD YOU PLEASE HELP US WITH THIS ?").

- 2019 Honda CR-V. NHTSA ID No. 11163577 (dated 12/26/2018) ("EXCESS OIL FUEL IN ENGINE BROUGHT TO DEALER THEY SAID NO PROBLEM ONLY IN COLD STATES I LIVE IN CALIFORNIA. HAD TO PAY TO CHANGE OIL EVEN THOU MANUAL SAYS DO NOT OVER FILL THE SAME DEALER HAD CHANGED OIL BEFORE AND DID NOT OVERFILL.").

- 2019 Honda CR-V. NHTSA ID No. 11166215 (dated 01/10/2019) ("MOTOR OIL SMELLS LIKE GASOLINE AFTER ONLY 139 MILES. HONDA CHANGED OIL AND GASOLINE SMELL IN OIL RETURNED AFTER ONLY 50 MILES. CAR DRIVEN UNDER NORMAL CIRCUMSTANCES.").

- 2019 Honda CR-V. NHTSA ID No. 11170823 (dated 01/18/2019) ("AFTER BUYING THIS NEW CAR I NOTICED TWICE GAS SMELL WHILE DRIVING I CHECKED THE ENGINE OIL IT SMELLS GAS I TOOK IT TO THE DEALER HE SAID THE OIL HAS GAS IN IT AND ADVISED ME TO WATCH THE LEVEL AND THE SMELL, BRING IT BACK IF ENGINE LIGHT TURN ON OR SMELL STRONG SMELL OF GAS AGAIN. THE IS UNSAFE TO DRIVE SINCE GAS LEAKS TO THE OIL THAT CAN CAUSE CAR TO [ ]STALL WHEN OIL LEVEL GETS TOO HIGH. ALSO GAS SMELL MAKES DRIVER AND PASSENGERS DIZZY AND INCREASES CHANCE OF ACCIDENT HONDA IS VERY LAZY TO ACT SINCE THIS IS 3RD GENERATION OF CRV EX WITH TURBO ENGINE. HONDA SAID THAT THIS CAN HAPPEN IN VERY COLD WEATHER AND WITH FREQUENT SHORT DRIVING I'M LIVING IN GEORGIA, NO EXTREME COLD AND I DRIVE MOSTLY ABOUT 15 MILES TRIPS THIS CAR IS DEFECTED AS MANY CRV CARS WITH TURBO ENGINE[.]").

- 2019 Honda CR-V. NHTSA ID No. 11173129 (dated 01/30/2019) ("I NOTICED GASOLINE SMELL INSIDE THE CAR DURING DRIVING, THE CAR HAD 150 MILES TOOK IT TO THE DEALER OF HONDA ON JANUARY 16TH THE SERVICE MANAGER EXAMINED THE CAR TOLD ME THERE WAS GAS IN THE OIL, AND TO RETURN BACK IF THE OIL INCREASES,AND AFFECTED THE DRIVABILITY AND ENGINE LIGHT TURNS ON. HE REFUSED TO GIVE ME PAPER WORK OF THE VISIT OR COPY OR THE REPORT PAPER HE HAD IN HIS HAND, I WENT AGAIN ASKING ABOUT THAT VISIT PAPERWORK HE SAID HE RAN SOME TEST ON THE CAR AND THERE IS NO PAPERWORK I REPORTED THE CASE WITH HONDA. THIS IS A SAFETY ISSUE THE OIL DILUTED WITH GAS AND THE LEVEL GOES HIGH THEN THE CAR CAN [ ]STALL ON ROAD[.]").

- 2019 Honda CR-V. NHTSA ID No. 11185481 (dated 03/09/2019) ("GAS IS IN THE ENGINE OIL. AS A RESULT OF THIS, THERE IS A GAS SMELL IN THE CABIN AS WELL.").

- 2019 Honda CR-V. NHTSA ID No. 11209349 (dated 05/22/2019) ("SMELL GASOLINE FROM ENGINE OIL UPON INSPECTION FROM DIPSTICK. I HAVE JUST BOUGHT THIS CAR A MONTH AGO.").

- 2019 Honda CR-V. NHTSA ID No. 11217243 (dated 06/01/2019) ("THE 2019 HONDA CR-V TOURING VEHICLE HAS EXPERIENCED GASOLINE CONTAMINATION OF THE ENGINE OIL DUE TO AN ISSUE WITH THE ENGINE DESIGN. THE ABNORMAL LEVELS OF GASOLINE CONTAMINATES HAS BEEN VALIDATED THROUGH A THIRD-PARTY LAB TEST. THE DEGRADATION OF THE LUBRICATING PROPERTIES OF THE ENGINE OIL RESULTS IN ENGINE PERFORMANCE AND IN-CABIN AIR QUALITY ISSUES. THE VEHICLE HAS BEEN TAKEN INTO THE MANUFACTURER'S SERVICE DEPARTMENT, HOWEVER, THEY HAVE INDICATED THAT THERE IS NO FIX FOR THIS ISSUE AT THIS TIME UNLESS YOU LIVE IN SPECIFIC STATES WHERE THE FIX IS BEING OFFERED. THIS IS A KNOWN INTERNATIONAL ISSUE WITH THIS VEHICLE TYPE AND HONDA HAS ACKNOWLEDGED THAT THIS IS A PROBLEM. SOME REPORTS INDICATE THAT CONSUMERS HAVE EXPERIENCED SEVERE VEHICLE PERFORMANCE ISSUES (I.E., STALLING) AS WELL AS HEALTH RELATED ISSUES DUE TO SUPER STRONG GASOLINE ODORS IN THE CABIN OF THE VEHICLE. THE REDUCED LUBRICATION QUALITY OF THE ENGINE OIL DUE TO THE ENGINE DESIGN ISSUE HAS LONG-TERM PERFORMANCE INDICATIONS.").

- 2019 Honda CR-V. NHTSA ID No. 11243389 (dated 08/12/2019) ("ENGINE OIL DILUTION.").

- 2019 Honda CR-V. NHTSA ID No. 11244229 (dated 08/15/2019) ("HONDA OIL DILUTION - DRIVING THE CAR ON THE INTERSTATE AND THE ENGINE

LIGHT CAME ON AND THE ENGINE SHUT OFF.  PULLED OVER AND RESTARTED THE CAR.  DROVE 2 MILES AND ENGINE SHUT OFF AGAIN. PULLED OVER STARTED CAR DROVE 100 FT AND ENGINE SHUT OFF AND EVERYTHING INCLUDING WHEELS LOCKED UP.  CAR TAKEN TO HONDA DEALER AND THEY STATE THAT THE ENGINE RUNNING ON 3 CYLINDERS BECAUSE SPARK PLUG FOWLED UP.  REPLACED SPARK PLUG. PICKED UP THE CAR DROVE IT 300 MILES AND ENGINE STUTTERED, DID NOT SHUT OFF AND BLUE SMOKE PLUMES CAME OUT OF EXHAUST. SHUT THE CAR OFF AND BLUE SMOKE WENT AWAY,  DID NOT DRIVE THE CAR FOR ONE WEEK. DROVE CAR 100 MILES ON INTERSTATE, ENGINE LIGHT COMES ON AND ENGINE SHUTS OFF. PULL OVER. RESTART THE ENGINE AND WAS ABLE TO DRIVE 50 MILES TO THE SAME HONDA DELEAR FOR THE FIRST TIME REPAIR. MECHANIC TELLS ME THAT THE OIL CASE WAS 1/2 QUART TOO MUCH.  SOUND LIKE OIL DILUTION ISSUE.").

- 2019 Honda CR-V. NHTSA ID No. 11265822 (dated 10/03/2019) ("GASOLINE LEAKING INTO THE ENGINE LUBRICATING OIL. WHEN I BOUGHT THE CAR THE DEALER ASSURED ME THAT HONDA HAD TAKEN CARE OF THE PROBLEM. I FEEL THAT A RECALL IS JUSTIFIED SINCE THIS WILL CERTAINLY LEAD TO SHORTER ENGINE LIFE AND COULD POSSIBLY LEAD TO AN ENGINE FIRE. I NOTICED THE PROBLEM AFTER CHECKING THE OIL AFTER A TRIP OF 500 MILES.").

- 2019 Honda CR-V. NHTSA ID No. 11289970 (dated 12/18/2019) ("INTERMITTENT RAW GAS FUMES INSIDE CABIN OF 2019 HONDA CR-V. RAW GAS SMELL PRESENT WHILE VEHICLE IS PARKED, MOVING ON CITY STREETS AND ON THE HIGHWAY. DEALER WAS UNABLE TO REPLICATE THE PROBLEM. DEALER CONDUCTED AN EVAP FUNCTION TEST. THE VEHICLE PASSED.").

- 2019 Honda CR-V. NHTSA ID No. 11292184 (dated 12/30/2019) ("WHEN STARTING THE VEHICLE, A STRONG GASOLINE SMELL IS PRESENT IN THE CABIN.  AFTER CHECKING ONLINE, CHECKED THE ENGINE OIL AND THERE WAS A GASOLINE SMELL ON THE DIPSTICK.  THE ENGINE OIL WAS ABOVE THE FULL LINE DUE TO THE GASOLINE LEAKING INTO THE OIL COMPARTMENT.").

- 2019 Honda CR-V. NHTSA ID No. 11299154 (dated 01/13/2020) ("HONDA STATED THAT THE OIL DILUTION PROBLEM HAD BEEN CORRECTED FOR 2019 CRV'S. IT WAS NOT IN MY 2019 CRV. I HAVE APROX 21000 MILES AND EACH TIME OIL IS CHANGED. ITS BEEN A QUART HIGH OR MORE  ON THE DIPSTICK WITH A GASOLINE SMELL. THE DEALER WILL NOT TELL ME THAT THIS IS THE PROBLEM. THEY KEEP PUTTING ME OFF. VERY SIMPLY THIS IS ADDING TO WEAR AND TEAR ON THE CRV. ANOTHER PROBLEM IS THE GAS FUMES IN THE CAR CABIN WHICH ARE VERY DANGEROUS. WE HAVE FELT LIGHT HEADED

WHILE DRIVING . THIS WOULD CAUSE AN ACCIDENT IF WE WOULD PASS OUT FROM THE FUMES[.]").

- 2019 Honda CR-V. NHTSA ID No. 11300297 (dated 01/19/2020) ("2019 HONDA CR-V ON MY 2ND. OIL CHANGE THERE WAS GAS IN THE OIL AT 8250 MILES.I WILL AND WAS TOLD FROM DEALER TO DRIVE IT 500 MILES AND BRING IT IN AS I JUST HAD OIL CHANGE DONE. I WILL ALSO KEEP CHECKING THE OIL LEVEL AND BRING IT IN TO DEALER FOR NEXT OIL CHANGE OR IF I SEE OIL LEVEL RISING.").

- 2019 Honda CR-V. NHTSA ID No. 11302290 (dated 01/27/2020) ("THE ISSUE WAS DISCOVERED WHEN DOING AN OIL LEVEL CHECK. AFTER SEEING A PROBLEM I CHANGED THE OIL AND FILTER. THE DEALER HAD PUT 3.8 QTS. IN, BUT 5.0 QTS. CAME OUT. THE OLD OIL WAS VERY DIRTY AND VERY THIN. THE ISSUE = FUEL LEAKING INTO THE ENGINE OIL OF HONDA'S 1.5 TURBO ENGINE, INSTALLED INTO THE 2019 HONDA CR-V. THIS APPEARS TO BE THE SAME PROBLEM AS WITH THE 2017 & 2018 MODELS. HONDA REPORTED THAT THEIR FIX (APPARENTLY A SOFTWARE CHANGE) WOULD BE APPLIED TO THE 2019 MODEL. THE FIX DOES NOT SEEM TO HAVE WORKED. I DO HAVE A CASE NUMBER FROM AMERICAN HONDA MOTOR CO.").

- 2019 Honda CR-V. NHTSA ID No. 11302498 (dated 01/28/2020) ("2019 HONDA CRV-OIL DILUTION CAUSING OIL LEVEL TO RISE-CAUSED CAR TO GO INTO \"LIMP MODE\". INVOICE ATTACHED. I HAVE A 2019 HONDA CRV WITH ONLY 3196 MILES ON IT. ON 1/24/20, I WAS IN THE PASSING LANE OF A BUSY HIGHWAY WHEN THE CAR SUDDENLY LOST ACCELERATION! I PUT THE GAS PEDAL TO THE FLOOR AND NOTHING! THERE WERE CARS ALL AROUND ME AND IT WAS ABSOLUTELY TERRIFYING. I AND EVERYONE DRIVING AROUND ME WERE LUCKY, AS IT COULD EASILY HAVE BEEN A LARGE PILE UP ON THE HIGHWAY WITH CATASTROPHIC REPERCUSSIONS. THE CAR WAS TOWED TO THE DEALER WHERE IT WAS DETERMINED THAT THE ISSUE WAS CAUSED BY \"OIL DILUTION CAUSING ELEVATED OIL LEVEL\"...\"FOULED PLUGS AND MISFIRE CODES\"...\"OIL VERY THIN VERY DARK AND SMELLED\". THIS IS THE SAME ISSUE THAT OCCURRED IN PRIOR YEARS CRVS! THE HONDA TECH LINE DIDN'T HAVE A FIX FOR 2019S YET SO ADVISED THE DEALER TO CHANGE MY OIL AND REPLACE THE SPARK PLUGS. I AM TERRIFIED TO DRIVE THIS CAR AND AM STUCK IN A LEASE FOR 2 1/2 MORE YEARS. I CALLED HONDA CORPORATION AND THEY WOULDN'T GIVE ME ANY INFORMATION ON WHAT THEY WERE DOING FOR THIS, EXCEPT TO TELL ME THAT NO NOTICE IS EVER SENT TO OWNERS OF A CAR UNTIL A FIX IS FOUND. THAT IS FRIGHTENING. I CAN'T BELIEVE THEY CAN CONTINUE TO SELL THEM WHILE THIS DANGEROUS SITUATION EXISTS.").

- 2019 Honda CR-V. NHTSA ID No. 11306259 (dated 01/31/2020) ("VEHICLE HAS A DEMONSTRABLE PROBLEM WITH THE ENGINE OIL BEING DILUTED WITH FUEL THAT CAUSES THE OIL TO BE THINNED OUT TO A POINT WHERE IT IS NO LONGER IN SPEC FOR THE VISCOSITY. THE OIL LEVEL IN THE CRANKCASE RISES AND CAUSES A CHECK ENGINE LIGHT TO BE ILLUMINATED AND ALSO CAUSES A STRONG FUEL SMELL TO BE PRESENT IN THE CABIN. THIS IS AN ONGOING PROBLEM THAT HAS BEEN REPORTED TO BOTH HONDA DEALERS AS WELL AS HONDA USA AND THEY HAVE CHOSEN TO TAKE NO ACTION.").

- 2019 Honda CR-V. NHTSA ID No. 11308097 (dated 02/09/2020) ("OIL DILUTION. DIP-STICK WAS READING HIGH AFTER RECENT OIL CHANGE AT DEALERSHIP. DIP-STICK HAD STRONG ODOR OF GASOLINE. HONDA REMEDY WAS ANOTHER OIL CHANGE. FILED COMPLAINT WITH HONDA, CASE #10193498 AND WITH DEALERSHIP I PURCHASED FROM. I MAY NEED TO HIRE A LAWYER").

- 2019 Honda CR-V. NHTSA ID No. 11308713 (dated 02/12/2020) ("OIL LEVEL IS HIGH, STRONG SMELL OF GAS IN THE OIL. TOOK IT TO DEALER, WHO CHANGED THE OIL, SAID THERE WAS NOTHING WRONG. A FEW MILES LATER I HAVE THE SAME ISSUE. THE OIL IS BEING DILUTED WITH GAS. CURRENTLY THE CAR RUNS. HONDA IS NOT ADDRESSING THIS ISUE.").

- 2019 Honda CR-V. NHTSA ID No. 11309467 (dated 02/16/2020) ("THE ENGINE IS GETTING GAS IN THE OIL. I HAVE TAKEN OIL SAMPLES THAT SHOW GREATER THAN 5% GAS IN THE ENGINE WITH LOWER THAN MINIMUM OIL VISCOSITY. I HAVE TAKEN IT TO THE DEALER WHO CHANGED THE OIL. LESS THAN 1000 MILES LATER, THE PROBLEM IS BACK. THE ENGINE HESITATES RANDOMLY ESPECIALLY WHEN SLOWING DOWN. I'VE TAKEN THE VEHICLE TO TWO DIFFERENT DEALERS WITH THE SAME \"THERE'S NOTHING WE CAN DO\". I ASKED THEM IF THEY COULD PULL THE INJECTORS AND CHECK TO SEE IF ONE IS FAULTY AND WAS TOLD \"IT'S DIRECT INJECTION, THE INJECTORS CANNOT BE PULLED\", WHICH OF COURSE IS FALSE. THE LAST MECHANIC TOLD ME THAT UNLESS THE OIL LEVEL IS MORE THAN 1.5 INCHES ABOVE THE ADD MARK, THERE WAS NO CHANCE OF DAMAGE TO THE ENGINE. I ESTIMATE THAT AT THAT LEVEL, THERE WOULD BE 30% GAS IN OIL. THE COMPANY STATED THAT THE PROBLEM FOR THE 1.5 TURBO ENGINE IN THE 2019 CR-V WAS SOLVED. I DON'T BELIEVE IT HAS BEEN SOLVED BASED ON MY AND OTHERS EXPERIENCE.").

- 2019 Honda CR-V. NHTSA ID No. 11309697 (dated 02/17/2020) ("IN COLD WEATHER, WITH A NORMAL CITY DRIVING HABIT, FUEL AND OIL SMELL IS CONSISTENTLY PRESENT DURING THE DRIVING, IN THE STREET OR HIGHWAY, CAUSING NAUSEOUSNESS AND DIZZINESS.

THIS IS REGARDLESS OF TURING, STOPPING, OR ANOTHER CAR DRIVING INFRONT OF US, THE FUEL AND BURNED OIL SMELL IS PRESENT. OIL WAS CHANGED, THE AIR FILTER WAS CHANGED, THE PAN UNDER THE ENGINE WAS CLEANED, THE OIL DRAIN PLUG WAS SECURED, AND NO LEAKAGE; NEVERTHELESS, THE FUEL AND BURNED OIL SMELL IS STILL PRESENT IN THE CAR. WE BOUGHT THE CAR ON 3/30/2019, AND THE ISSUE STARTED SHOWING UP WHEN THE WEATHER GOT COLDER.").

- 2019 Honda CR-V. NHTSA ID No. 11310734 (dated 02/22/2020) ("STRONG GASOLINE FUMES WERE NOTED IN THE VEHICLE INTERIOR AT ABOUT 2,000 MILES. THE ISSUE SEEMED TO PRESENT ITSELF WHEN RESTARTING AFTER RELATIVELY SHORT TRIPS. ISSUE WAS REPORTED TO A LOCAL DEALERSHIP AT APPROXIMATELY 3,000 MILES. I WAS TOLD THAT THIS HAD BEEN AN ISSUE WITH 2017/2018 MODELS, THAT THE ISSUE HAD BEEN RESOLVED AND DID NOT APPLY TO 2019 MODELS. THIS WAS CONTRARY TO WHAT I WAS EXPERIENCING, SO I RESEARCHED AND DETERMINED THAT THIS DOES IN FACT APPEAR TO BE AN ISSUE WITH THE 2019 MODEL. WHEN PULLING THE DIPSTICK TO CHECK THE OIL, IT SMELLED AS IF I HAD DIPPED THE STICK IN A CAN OF GASOLINE, NOT OIL. I REPORTED THE ISSUE TO A SECOND DEALERSHIP, THE DEALERSHIP FROM WHICH THE VEHICLE WAS PURCHASED. THE INDIVIDUAL CHECKING THE CAR IN, AGREED THAT UPON STARTING THE CAR FOR THE TEST DRIVE, THE CABIN SMELLED STRONGLY OF GASOLINE AND THAT THEY WOULD CHECK IT OUT. AFTER THE VEHICLE WAS CHECKED-OUT BY A MECHANIC, THEY SAID THAT IT WAS READY TO PICK UP AND THAT NOTHING WAS FOUND. I INQUIRED AS TO GASOLINE SMELL NOTED UPON CHECK-IN. THEY INDICATED THAT THE COMMENT MADE COULD NOT BE CONSIDERED AS THE PERSON CHECKING THE VEHICLE IN AND GOING FOR A TEST DRIVE WAS NOT A LICENSED MECHANIC. I WAS TOLD THAT I NEEDED TO TAKE THE MATTER UP WITH HONDA AMERICA AS THERE WAS NOTHING THEY COULD DO. IT WAS SUGGESTED THAT IF THE ISSUE IS ASSOCIATED WITH ENGINE DESIGN, THERE WAS NOTHING THEY COULD DO, THAT I WOULD NEED TO APPEAL TO HONDA AMERICA TO HAVE AN ENGINEER CHECK MY CAR OUT, THAT IF THEY WERE TO CALL, HONDA WOULD NOT SEND AN ENGINEER. IN THE MEANTIME, I HAVE A $30,000, PURCHASED VEHICLE THAT I AM NOT ABLE TO GIVE BACK TO HONDA AT THE END OF A SHORT LEASE. I AM ALSO BEING EXPOSED TO GASOLINE FUMES ON A REGULAR BASIS. I WAS KNOWINGLY SOLD A DEFECTIVE VEHICLE WITH AN ENGINE THAT WILL NOT LAST FOR THE 10+ YEARS THAT I PLANNED TO DRIVE IT IN RETIREMENT.").

- 2019 Honda CR-V. NHTSA ID No.11320909 (dated 04/12/2020) ("FUEL GETTING INTO OIL TRANSFER CASE AND CONTAMINATING/DILUTING

THE OIL. WE PURCHASED A 2019 HONDA CR-V EX-L ON 10/31/19. I HAD DONE SOME RESEARCH ON THIS PROBLEM SINCE IT HAD BEEN REPORTED WITH THE 2017-2018 MODELS WITH THE SAME 1.5 TURBO ENGINE. I BROUGHT IT TO THE DEALER'S ATTENTION BEFORE WE BOUGHT THE CAR AND WE WERE TOLD THAT HONDA HAD \"FIXED THE PROBLEM AND THAT OUR VEHICLE HAD THE FIX\". WE WERE PLANNING A TRIP TO DALLAS, TX ON 02/22/20 AND PLANED TO DRIVE THERE FROM OUR HOME IN DULUTH, MN. IN PREPARING FOR THE TRIP, I CHECKED THE ENGINE OIL AND FOUND THAT THE OIL LEVEL WAS 1/2\" ABOVE THE FULL MARK ON THE DIPSTICK, AND THE OIL WAS DARK AND SMELLED STRONGLY OF GASOLINE. THE CAR HAD 2407 MILES ON IT AT THIS TIME AND OBVIOUSLY HONDA HAD NOT FIXED THE PROBLEM. I TOOK THE CAR TO THE DEALER ON 02/21/20 WHERE I PURCHASED THE CAR AND HAD THEM CHECK THE OIL. THEY OBSERVED THE SAME ISSUES THAT I AM REPORTING. THEY STATED THAT HONDA KNOWS ABOUT THIS PROBLEM BUT HAS NOT YET ISSUED A RECALL. BUT THEY ALSO STATED THAT HONDA WAS NOT PROVIDING ANY EXPLANATION OR REMEDY OTHER THAN TO CHANGE THE OIL AT THE OWNER'S EXPENSE. MY DEALERSHIP, TO THEIR CREDIT, AGREED TO CHANGE THE OIL AND FILTER AT NO CHARGE TO ME. THE SERVICE MANAGER ALSO EXPLAINED WHY THE ISSUE IS OCCURRING AND ACKNOWLEDGED THAT HONDA MAY YET BE FORCED TO ISSUE A RECALL. HONDA HAS ALREADY OFFERED AN EXTENDED WARRANTY FOR THE 2017-18 MODELS AS THE RESULT OF A CLASS ACTION SUIT, BUT NOTHING IS BEING DONE FOR THE 2019 OR 2020 MODELS THAT HAVE THE SAME ENGINE AND SAME PROBLEM. I AM CONCERNED ABOUT PREMATURE ENGINE WEAR, DAMAGE, OR POTENTIAL OF FIRE OR EXPLOSION. DEALER REPAIR #122992, KRENZEN HONDA DULUTH, MN.").

- 2019 Honda CR-V. NHTSA ID No. 11321683 (dated 04/20/2020) ("THE CONTACT OWNS A 2019 HONDA CR-V. THE CONTACT STATED WHILE DRIVING 25 MPH, THE VEHICLE HESITATED WITH MULTIPLE UNKNOWN WARNING LIGHTS ILLUMINATED. THE CONTACT STATED THAT THE VEHICLE FAILED TO EXCEED 12 MPH WITH THE ACCELERATOR PEDAL DEPRESSED. THE VEHICLE WAS TOWED TO RYAN HONDA (1212 2ND ST W, WILLISTON, ND 58801), WHERE THE CONTACT WAS INFORMED OF GASOLINE AND OIL MIXTURE IN THE ENGINE. THE VEHICLE WAS NOT DIAGNOSED NOR REPAIRED. THE MANUFACTURER HAD NOT BEEN INFORMED OF FAILURE. THE FAILURE MILEAGE WAS 976.").

- 2019 Honda CR-V. NHTSA ID No. 11322203 (Dated 04/24/2020) ("2,790 MILES. GAS FUMES IN THE CABIN OF NEWLY PURCHASED 2019 HONDA CR-V AND ON THE OUTSIDE OF CAR NEAR FRONT OF CAR. ON 02/03/2020, I TOOK THE CAR TO HONDA'S SERVICE CENTER WHERE THEY PERFORMED A MULTI-POINT INSPECTION(VISUAL INSPECTION).

THEY RAN THE CAR IN THE GARAGE FOR 45 MINUTES BUT WERE UNABLE TO DUPLICATE THE PROBLEM AND THE SMELL COULD NOT BE NOTICED INSIDE THE CAB, AROUND THE FUEL TANK OR UNDER THE HOOD. BUT THEY DID SAY, THE OIL HAD A FUEL SMELL. I FOUND THIS IS A KNOWN OIL DILUTION PROBLEM THAT HAS BEEN FOUND IN 2018 AND 2017 MODELS AND THAT IT WAS TO BE CORRECTED FOR 2019. HONDA IS AWARE THIS IS STILL AN ISSUE BUT SAY THEY CANNOT DUPLICATE THE ISSUE SO THEY DO NOTHING. I HAVE RESPIRATORY PROBLEMS AND VERY SENSITIVE TO CERTAIN ODORS AND FUMES, AND WHEN I DRIVE THE CAR I HAVE TO HAVE THE MOON ROOF OPEN AND THE WINDOWS CRACKED. IT CAUSES DISCOMFORT IN MY CHEST AND AIR PASSAGE. I CALLED HONDA CUSTOMER SERVICE SEVERAL TIMES AND OPENED A CASE. IT WAS ASSIGNED TO A CASE MANAGER WHO SAID HE WOULD LOOK INTO IT AND CALL ME BACK IN A COUPLE OF DAYS, THAT WAS 2 MONTHS AGO. HE NEVER CALLED. I CALLED THEM AGAIN 4/20/2020 AND WAS TOLD I CAN GET A SECOND OPINION AT ANOTHER HONDA SERVICE CENTER, BUT IF THE RESULTS ARE THE SAME THERE IS NOTHING THEY CAN DO. HONDA KNOWS THIS IS AN ISSUE THAT HAS NOT BEEN CORRECTED FOR THE 2019 AND REFUSES TO DO ANYTHING. THIS CAR IS A HAZARD FOR THOSE WITH HEALTH ISSUES, SMALL CHILDREN AND FOR ANYONE BREATHING IN THESE FUMES. I AM A SENIOR CITIZEN WHO BOUGHT THIS CAR BASED ON GOOD REVIEWS BECAUSE I WANTED A GOOD CAR THAT WOULD POSSIBILITY BE THE LAST CAR I HAD TO PURCHASE AND IT MAY BE, BUT NOT FOR THE REASONS I HOPED. WHEN SOMEONE PURCHASES A BRAND NEW CAR WITH A 5 YEAR CAR NOTE, THE LEAST THEY SHOULD BE ABLE TO EXPECT IS THE ABILITY TO DRIVE THE CAR WITHOUT FEELING THEY ARE PUTTING THEIR LIFE IN JEOPARDY. HONDA IS AWFUL AND SHAMEFUL.").

- 2019 Honda CR-V. NHTSA ID No. 11322907 (dating 04/30/2020) ("DEVELOPED OIL DILUTION PROBLEM, TO THE POINT WHERE IT DAMAGED MY SPARK PLUGS AND THE ENGINE HAD TROUBLE RUNNING, HAD TO BE TOWED TO DEALERSHIP. CAUSE SMOKING UNDER THE HOOD AND SHAKINESS IN THE MIDDLE OF DRIVING, WHEEL LOCKED UP AND I COULDN'T STEER, ALL WARNING LIGHTS CAME ON THE DASH TOGETHER, NOT SAFE AT ALL.").

- 2019 Honda CR-V. NHTSA ID No. 11322941 (dated 05/01/2020) ("THERE IS A STRONG GASOLINE SMELL IN THE CABIN IMMEDIATELY AFTER STARTING THE VEHICLE. THE SMELL IS STRONGEST WHEN THE ENGINE HAS ALREADY BEEN WARMED UP. I HAVE TAKEN THE CR-V IN TO THE DEALER TWICE AND THEY HAVE NOT BEEN ABLE TO RESOLVE THE ISSUE.").

- 2019 Honda CR-V. NHTSA ID No. 11323047 (dated 05/02/2020) ("GASOLINE IS GETTING INTO THE OIL. JUST AS IT HAS BEEN REPORTED IN THE

2017 AND 18 MODELS, 1.5 LITER TURBO CHARGED ENGINE. I HAVE HEARD THAT THE 2020 MODEL HAS THE GASOLINE OIL DILUTION PROBLEM ALSO. THIS ISSUE WAS IDENTIFIED ON THE FIRST OIL CHANGE. WE WERE ASKING BY THE DEALER TO GET THE OIL LEVEL CHECKED EVERY 1000 MILES, WE JUST HAD THAT HAPPEN AND THE OIL LEVEL WAS RECORDED AS SLIGHTLY HIGH. IT SMELLS OF GASOLINE. THE DEALER TOLD US HONDA IS WORKING ON A SOLUTION. IN THE MEANTIME OUR ENGINE IS MAKING METAL AND IT'S LIFE IS GETTING SHORTER AND SHORTER. LACK OF LUBRICATION. PURCHASED CR-V NEW 9/4/19, LAST OIL LEVEL CHECK WAS 4/30/20.").

- 2019 Honda CR-V. NHTSA ID No. 11372600 (dated 11/02/2020) ("VEHICLE KEEPS GAINING OIL LEVEL FROM BURNED FUEL EVEN THOUGH THE DEALER INSTALLED THE SOFTWARE UPDATE. I LIVE IN THE SOUTH SO THE COLD WEATHER IS NOT THE ISSUE. I AM AN INDUSTRIAL MECHANIC FOR 47 YEARS AND DO MY OWN MAINTENANCE SO I KNOW WHAT THE CORRECT LEVEL IS. THE DEALER SAYS THERE IS NO FIX BUT DILUTED FUEL LEADS TO DAMAGE AND IF SEVERE, CAN CAUSE ENGINE FAILURE AND ACCIDENT. THE IMAGE POSTED IS ABOUT 7K MILES ON OIL CHANGE AND THE LEVEL IS ABOVE THE LEVEL MARKER PAD. . . .").

- 2019 Honda CR-V. NHTSA ID No. 11330807 (dated 06/25/2020) ("WE WERE DRIVING ON A STRAIGHT SECTION OF ROAD AT 80MPH ON I-24 E WHEN THE ENGINE LIGHT CAME ON AND WE LOST POWER TO THE WHEELS BUT THE ENGINE WAS STILL RUNNING. THERE WAS NO JERKING MOTION OR ANY SIGN OF TROUBLE WHEN THIS HAPPENED. WE HAD TO COAST IN HEAVY TRAFFIC WITH SEMI-TRUCKS ALL AROUND US TO GET TO THE RIGHT HAND SHOULDER FOR A SAFE PLACE. HONDA'S REPLY TO THE DEALER WAS TO CHANGE THE OIL OUT IF THERE WAS GAS IN THE OIL. THERE WAS GAS IN THE OIL WHEN THE DEALER CHECKED SO THEY REPLACED THE OIL. NO OTHER FIX WAS SUGGESTED BY HONDA TO THE DEALER EVEN THOUGH THIS PROBLEM WAS SUPPOSED TO BE FIXED FOR THE 2019 MODELS AS IT HAD INITIATED FIELD REPAIRS FOR THE 2017 & 2018 MODELS. THE FIX WAS SUPPOSED TO BE IMPLEMENTED AT THE ASSEMBLY PLANTS BEFORE THE 2019 MODELS WERE SOLD.").

- 2019 Honda CR-V. NHTSA ID No. 11467426 (dated 06/03/2022) ("Couldn't hardly BREATHE AS SEVERE FUMES COMING FROM THE CAR VENTS. AND OIL SMELLS LIKE GAS . I had been smelling it off and on but thought it was coming from cars around me! This smell has been going on a few days. But car was parked all day, moved it a couple of feet and the fumes about made me throw up and couldn't breath [sic]. Call Honda they said it was [still] under warranty and it would get fixed.").

- 2019 Honda CR-V. NHTSA ID No. 11466211 (dated 05/26/2022) ("2019 Honda crv EXL certified used purchased on may 12 - 2022 I checked the oil it was ok but took oil cap off strong smell of gas oil dilution like the recall for 17and 18crv this is the same engine in it no recall dealer said keep eye on oil if goes up bring it in has like 16590 miles on it they said t[o] changed [sic] oil should have noticed it how can you certify it. Lemon.").

- 2019 Honda CR-V. NHTSA ID No. 11464735 (dated 05/15/2022) ("Oil dilution issue in my 2019 Honda CRV. Gas getting into the oil and stalling the vehicle. Honda dealership changed oil, spark plugs and differential fluid. I was told to drive the vehicle more. The issue was not fixed and gas is still getting into the oil and continuing to damage the engine. The dealership hasn't taken responsibility of this issue or the Honda Corporation. I contacted them and get no response back.").

- 2019 Honda CR-V. NHTSA ID No. 11464735 (dated 05/15/2022) ("Oil dilution issue in my 2019 Honda CRV. Gas getting into the oil and stalling the vehicle. Honda dealership changed oil, spark plugs and differential fluid. I was told to drive the vehicle more. The issue was not fixed and gas is still getting into the oil and continuing to damage the engine. The dealership hasn't taken responsibility of this issue or the Honda Corporation. I contacted them and get no response back.").

- 2019 Honda CR-V. NHTSA ID No. 11324511 (dated 05/14/2020) ("2019 HONDA CRV EX. ENGINE OIL GETTING INTO THE OIL. OIL DIPSTICK WAY ABOVE THE ALLOWED MAXIMUM MARK. JUST BOUGHT IT IN SEPTEMBER 2019 AND HAS ONLY 4,600 MILES. OIL GAUGE SHOWS 40% LEFT BEFORE NEXT CHANGE. DEALER TOLD ME NOT TO BRING IT UNTIL IT GETS TO 15% AND THAT THERE IS NO DANGER DRIVING IT.").

- 2019 Honda CR-V. NHTSA ID No. 11324347 (dated 05/12/2020) ("FUEL IS DILUTING ENGINE OIL. YOU SMELL GAS IN GARAGE AND HEAR THE VACUUM PUMP RUNNING THAT IS IN THE POLLUTION CONTROL SYSTEM. HIGHEST OIL LEVEL HAS BEEN 6.5 QUARTS DRAINED OUT OF ENGINE. RIGHT NOW IT TOOK 200 MILES TO INCREASE OIL LEVEL  A HALF INCH ON DRIP STICK. CR-V PURCHASED 4-9-19. TOOK IN FIRST IN 8-27-19 FOR VACUUM PUMP RUNNING ON AND OFF WHILE VEHICLE WAS PARKED IN GARAGE. DEALER HAD NO IDEA WHERE THE SOUND WAS COMING FROM AND SENT US HOME. CONTINUES TODAY.").

- 2019 Honda CR-V. NHTSA ID No. 11399032 (dated 03/03/2022) ("2019 HONDA CRV. I HAVE NOTICED THAT MY OIL HAS AN AMOUNT OF GAS OVER 5% TWICE BY ANALYSIS. I AM WORRIED ABOUT THE PROBLEM OF OIL DILUTION THAT HONDA CRV'S (MODEL YEAR 2017 & 2018) HAVE HAD. I FEAR THAT I WILL HAVE PREMATURE ENGINE DAMAGE AND MORE IMPORTANT LOSS OF POWER OR STALLING ON THE HIGHWAY AS THE 1.5 LITER DIRECT INJECTION HONDA CRV ENGINES HAVE EXPERIENCED.").

- 2019 Honda CR-V. NHTSA ID No. 11449534 (dated 01/31/2022) ("I just started driving and I lost all pick up car went down to 8mph , wouldn't go any faster. Fortunately I managed to get on a side street and make it to a church parking lot. if I would have been trying to get across traffic, this could have been dangerous let alone just stopping on the road. I called the Dealership and they gave me the number for there [sic] towing company (would be 3-5 hrs) called AAA would have been even longer. The police called a tow truck for me. They towed it to the dealership. Result gasoline in oil. Later I learned this is a problem called Oil Dilution with these cars. The dealership changed the oil , filter and spark plugs. All of my warning lights were flashing. They say this happened because of driving short trips. I've had cars  that I drove the same distance to work and back, never had any problems. The car I had ran great, just wanted to make sure I had a reliable car as I'm getting older(67).").

- 2019 Honda CR-V. NHTSA ID No. 11448731 (dated 01/24/2022) ("Gas was getting into the crankcase, mixing with the oil so that the CRV would not operate. The warning lights did not come on until it was too late.  It had to be towed.").

99.    A list of representative complaints filed with the NHTSA detailing the Engine

Defect found in the Honda Civic includes:

- 2020 Honda Civic. NHTSA ID No. 11419223 (dated 06/01/2021) ("The contact owns a 2020 Honda Civic. The contact stated while inspecting and changing the oil, he noticed an excessive gasoline smell within the oil. The vehicle was taken to the dealer where it was diagnosed, the dealer stated gas in the oil is normal and to bring the car back after driving around a thousand miles. The mechanic changed the oil. The vehicle was not repaired. The failure recurred. The vehicle was taken to the dealer to be diagnosed. The technician informed the contact that he would need to speak with the manufacturer for a further option for the repair. The manufacturer was contacted by the technician and was informed that the VIN was not under recall and that the vehicle was performing as designed. The contact stated that the vehicle had experienced the oil dilution failure.").

- 2019 Honda Civic. NHTSA ID No. 11204123 (dated 04/27/2019) ("TERRIBLE SMELL INSIDE THE CAR AND OUTSIDE WHEN PARKED IN GARAGE AFTER SHORT DRIVE. OIL DILUTION . STRONG GASOLINE VAPORS . GASOLINE MIXING WITH OIL IN ENGINE.").

- 2019 Honda Civic. NHTSA ID No. 11359797 (dated 09/18/2020) ("THE CONTACT OWNS A 2019 HONDA CIVIC. THE CONTACT STATED WHILE DRIVING AT VARIOUS SPEEDS, THE VEHICLE JERKED, LOSS MOTIVE POWER, SWITCHED TO LIMP MODE WITH THE CHECK ENGINE WARNING LIGHT ILLUMINATED. THE CONTACT STATED THAT THE VEHICLE FAILED TO PROPERLY ACCELERATE WHILE IN LIMP MODE. AFTER STOPPING THE VEHICLE, THE CHECK ENGINE WARNING LIGHT DISAPPEARED  AND  THE  VEHICLE  OPERATED  NORMALLY.  THE

39

VEHICLE WAS TAKEN TO THE LOCAL DEALER AUTONATION HONDA LOCATED AT 23551 MAGIC MOUNTAIN PKWY, VALENCIA, CA 91355, TO BE DIAGNOSED. THE CONTACT WAS INFORMED THAT THE FAILURE WAS CAUSED BY CONTAMINATED FUEL. AFTER DRAINING THE FUEL SYSTEM, THE CONTACT RETRIEVED THE VEHICLE HOWEVER, THE FAILURE RECURRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE CONTACT INDICATED THAT THE FAILURE OCCURRED AFTER THE VEHICLE WAS REPAIRED UNDER NHTSA CAMPAIGN NUMBER: 20V314000 (FUEL SYSTEM, GASOLINE) IN JULY 2020. THE FAILURE MILEAGE WAS 29,000.").

- 2021 Honda Civic. NHTSA ID No. 11461876 (dated 04/23/2022) ("The car shuts down. Oil light and battery light shows in dashboard when this happens, usually when the vehicle is coming to a stop. This is an outgoing issue that is really concerning. I have take the car multiple times to the dealer and the have failed to solve any of this issues, the previously told me it was the turbo but never replace it, then i was told it was the electronic wastegate nothing was done then, now two days ago April 21, 2022 this happen again, haven't take the car to the dealer because I know they aren't going to do anything about it.")

100. A list of representative complaints filed with the NHTSA detailing the Engine

Defect found in the Honda Accord includes:

- 2020 Honda Accord. NHTSA ID No. 11352511(dated 09/01/2020) ("THE CONTACT OWNS A 2020 HONDA ACCORD. THE CONTACT STATED THAT WHILE DRIVING APPROXIMATELY 50-70 MPH IN THE RAIN, THE VEHICLE LOSS MOTIVE POWER AND STALLED. THE VEHICLE WAS RESTARTED. THE CONTACT NOTICED THERE WAS ABNORMAL ODOR OF FUEL IN THE OIL. THE CHECK ENGINE WARNING LIGHT WAS ILLUMINATED. THE CONTACT CALLED SOUTHEASTERN HONDA (3125 US-1, PALM BAY, FL 32905 (321) 270-8341) AND WAS INFORMED THAT THE SENSOR MAY HAVE GOTTEN WET CAUSING THE VEHICLE TO SWITCH TO LIMP MODE. THE VEHICLE WAS NOT DIAGNOSED NOR REPAIRED. THE MANUFACTURER WAS NOT CONTACTED. THE FAILURE MILEAGE WAS 300.").

- 2020 Honda Accord. NHTSA ID No. 11396928 (dated 02/19/2021) ("HAD OIL CHANGE SERVICE MANAGER SAID TECH CHANGING OIL NOTICED A STRONG SMELL OF GASOLINE IN OIL . MANAGER SAID YOU HAVE GAS IN YOUR OIL.").

- 2018 Honda Accord. NHTSA ID No. 11143633 (dated 10/29/2018) ("STRONG ODOR OF GASOLINE IN THE ENGINE AND RISING OIL LEVEL. CAR DOESN'T EVEN HAVE 200 MILES ON IT! THIS IS NOT WHAT I HAD EXPECTED FROM A HONDA.").

- 2018 Honda Accord. NHTSA ID No. 11151129 (dated 11/13/2018) ("FUEL DILUTION IN MOTOR OIL. BOUGHT THE CAR NEW, CHECKED DIPSTICK, OIL LEVEL IS UP PAST THE UPPER LINE AND SMELLS OF GAS. SENT A SAMPLE OF MOTOR OIL FOR TESTING AND CAME BACK HIGH FOR FUEL % IN OIL.  THIS IS NOT ACCEPTABLE FOR A BRAND NEW CAR WITH ONLY 1700 MILES!  THE CAR IS DRIVEN AN AVERAGE OF 40 MILES A DAY, SO SHORT TRIPS IS NOT A FACTOR.  CHANGED OIL USING HONDA FILTER AND MOBIL 1 0W-20 TO SPEC, AND AFTER 500 MILES, OIL LEVEL IS UP AND SMELLS OF GAS AGAIN. ATTACHED IS THE USED OIL ANALYSIS AT 1700 MILES.").

- 2018 Honda Accord. NHTSA ID No. 11160676 (dated 12/11/2018) ("OIL HAS GAS IN IT, DEALER SAYS THEIR IS NO FIX  AFRAID TO DRIVE AFRAID ENGINE WILL BLOW UP. HAD OIL CHANGED AT 1900 MILES 100 MILES LATER GAS IN [ ] OIL AGAIN[.]").

- 2018 Honda Accord. NHTSA ID No. 11164223 (dated 12/31/2018) ("ENGINE OIL SMELLS STRONGLY OF GASOLINE. THIS IS THE SAME 1.5L TURBO GDI ENGINE THAT HAS BEEN RECALLED ALREADY IN THE CIVIC AND CRV.").

- 2018 Honda Accord. NHTSA ID No. 11165479 (dated 01/06/2019) ("OIL IS SEEPING FROM THE TOP OF THE ENGINE ON THE DRIVER'S SIDE. I DO NOT KNOW THE NAME OF THIS COMPONENT. INITIALLY AND SHORTLY AFTER WE BOUGHT THE CAR NOVEMBER 2018, THERE WAS THE SMELL OF OIL/GAS AROUND THE EXTERIOR OF THE CAR. I DO NOT NOTICE IT NOW. I CHECK THE DIPSTICK OIL LEVEL ROUTINELY AND HAD TWO DEALERSHIPS CHECK THE OIL LEVEL; ONE DEALERSHIP CHANGED THE OIL. HOWEVER, THE CURRENT OIL LEVEL ON THE DIP STICK INDICATES THAT IT IS OVER-FULL AND THERE IS A SLIGHT SMELL OF GASOLINE ON THE DIPSTICK. THE OIL SEEMS VERY THIN (NOT VISCOUS) AND RUNS QUICKLY OFF OF THE DIPSTICK.").

- 2018 Honda Accord. NHTSA ID No. 11190553 (dated 03/21/2019) ("FUEL IS LEAKING INTO THE ENGINE OIL CAUSING THE VEHICLE TO BE OVERFILLED[.]").

- 2018 Honda Accord. NHTSA ID No. 11194469 (dated 04/07/2019) (" DRIVING ON A MAJOR HIGHWAY, 65 MPH WITH CRUISE CONTROL ON. SUDDENLY, WARNING LIGHTS CAME ON AND VEHICLE ABRUPTLY AND QUICKLY DECELERATED FROM 65 TO 20 MPH, FORCING ME TO PULL OFF THE HIGHWAY TO THE SIDE OF THE ROAD.  THERE WAS A STRONG SMELL OF GASOLINE IN THE CAR.  I TURNED THE ENGINE OFF. BECAUSE OF THE POTENTIALLY DANGEROUS SITUATION SITTING ON THE SIDE OF THE HIGHWAY, I RE-STARTED THE CAR A FEW MINUTES LATER AND DROVE TO THE NEXT EXIT A COUPLE

41

MILES AHEAD AT A REDUCE SPEED. I PULLED INTO A PARKING LOT AND CALLED FOR ASSISTANCE. THE HONDA DEALER IN ORCHARD PARK, NY ,WHERE THE CAR WAS TOWED, TOLD ME THAT THE OIL LEVEL WAS EXTREMELY HIGH, AND CHANGED MY OIL TO BRING IT TO A NORMAL OIL LEVEL. THE DEALER FURTHER TOLD ME THAT THE BECAUSE I DRIVE SHORT TRIPS AND THE WEATHER HAS BEEN COLD THAT IS WHY GASOLINE IS GOING INTO THE OIL AND GIVING ME ENGINE TROUBLE ON MY NEW CAR. MY HONDA DEALER IN ROCHESTER, NY CONFIRMED THE SAME AND SAID TO DRIVE MY CAR A COUPLE OF TIMES A WEEK FOR A LONGER PERIOD OF TIME TO HELP AVOID THIS ISSUE. MY DRIVING HABITS AS A STUDENT LIVING ON A SMALL CAMPUS, IN A COLD AREA, ARE THAT OF A FEW SHORT DRIVES A DAY TO CLASSES. I USE MY CAR PRIMARILY FOR DRIVING MYSELF HOME AND TO SCHOOL WHICH IS A 2 HOUR DRIVE. THERE IS NO RECALL FOR MY HONDA ACCORD, AND BOTH HONDA DEALERSHIPS SAID THAT THERE HAVE BEEN SIMILAR PROBLEMS WITH THE HONDA CR-V & CIVIC BUT THEY HAVE NEVER SEEN ANY ISSUES WITH A HONDA ACCORD. I WANT TO MAKE IT CLEAR THAT MY NEW 2018 HONDA ACCORD WITH 2220 MILES HAS THE SAME ISSUE, AND THE ENGINE MALFUNCTION ON THE HIGHWAY SCARED THE HELL OUT OF ME AND MY FAMILY AND I AM VERY GRATEFUL I DID NOT GET HURT OR MY CAR MALFUNCTIONING DID NOT CAUSE AN ACCIDENT AND CAUSE INJURY TO OTHER DRIVERS.").

- 2019 Honda Accord. NHTSA ID No. 11240633 (dated 07/30/2019) ("WE BOUGHT A BRAND NEW HONDA ACCORD 2019(LX) ON JUNE 29, 2019. NOT EVEN A MONTH LATER I.E. ON SATURDAY, JULY 27, 2019 AT 7:49 PM MY HONDA ACCORD STOPPED IN THE MIDDLE OF THE HIGHWAY DUE TO UNKNOWN REASON. BEHIND US WAS A TRUCK AND WE WERE AT 70 MPH HIGHWAY, WE WERE ABOUT TO BE HIT EITHER BY THE TRUCK OR BY THE CAR ON THE RIGHT LANE. THANKS TO THE TRUCK DRIVER AND THE PERSON DRIVING THAT SUV WHO STOPPED IN TIME. WE MERELY ESCAPED DEATH LIKE SITUATION. POST THAT I CALLED HONDA ROAD SIDE ASSISTANCE AND THEY ASKED ME TO MOVE TO A SAFE LOCATION AND CALL THEM AGAIN. I TRIED TO DRIVE THE CAR AGAIN AND DROVE COUPLE OF MILES WHERE MY CAR FINALLY STOPPED MOVING AND SMOKE STARTED COMING FROM THE EXHAUST. SCARED WE QUICKLY EVACUATED THE CAR AND MOVED TO A SAFE LOCATION AT 8:23 PM. POST THAT COPS CAME TO ASK WHY WE STOPPED THERE, WE EXPLAINED THEM THE SITUATION. WE WERE TOLD TO STOP THE ENGINE AND WAIT THERE TILL THE TOWING CAR ARRIVED. I HAD SO MUCH TRUST IN HONDA AND WE ARE SO TRAUMATIZED WITH THIS SITUATION AND I STILL CAN'T BELIEVE HOW THIS HAPPENED. THIS IS A BRAND NEW CAR WITH TOTAL MILES OF 657 MILES. I DIDN'T EXPECT THIS FROM A BRAND-NEW CAR. WE WERE LUCKY ENOUGH TO ESCAPE DEATH ON THE HIGHWAY. WE WERE EXHAUSTED AND TERRIFIED WITH THIS EVENT.

YESTERDAY HONDA SERVICE CENTER COMPANY CALLED AND TOLD THAT THE THE TURBO CHARGER FAILED INTERNALLY, CAUSING OIL TO GO INTO THE EXHAUST SYSTEM. THIS CAUSED CONTAMINATION OF THE CATALYTIC CONVERTER AND DAMAGED THE OXYGEN SENSORS. I AM NOT SURE IF I CAN OR ANYONE CAN TRUST HONDA EVER AGAIN. IF SOMETHING WOULD HAVE HAPPENED TO ME OR MY FAMILY WILL HONDA BE RESPONSIBLE FOR THIS.").

- 2018 Honda Accord. NHTSA ID No. 11309739 (dated 02/17/2020) ("THE VEHICLE HAS DEVELOPED EXCESSIVE GAS/OIL SMELL HALFWAY THROUGH THE OIL CHANGE CYCLE EVEN WHEN THE MAINTENANCE MINDER SHOWS 70% OIL LIFE. THE SMELL OCCURS WHEN DRIVING IN THE MIDWEST AND CAUSES THE GARAGE TO SMELL LIKE AN OIL/GAS MIXTURE. OIL DILUTION HAS BEGUN OCCURRING EVEN WHEN PROVIDED ENOUGH TIME TO WARM UP.").

- 2018 Honda Accord. NHTSA ID No. 11341984 (dated 07/29/2020) ("FUEL IS LEAKING INTO ENGINE OIL. MY MECHANIC SAID HE CAN SMELL THE FUEL IN THE OIL WHEN CHANGING OIL. ALSO THE OIL LEVEL INCREASES WHEN CHECKING OIL LEVEL OVER TIME. THIS OCCURS WHILE CAR IS IN MOTION.").

- 2018 Honda Accord. NHTSA ID No. 11386870 (dated 01/06/2021) ("THE CAR HAD A STRONG SMELL OF FUEL IN CABIN WHEN STARTING ON VARIOUS OCCASSIONS. THE CAR ALSO TEMPORARILY STALLED AND LOST POWER WHEN COMING TO A CORNER TURNING AND ALSO THREE TIMES WHEN COMING OFF THE FREEWAY. THE CAR WAS ALWAYS WARMED UP AND IN CALIFORNIA DURING THE WARM WEATHER. DEALER NOTED FUEL SMELL IN OIL AND INCREASED OIL LEVEL. HAD OIL CHANGED AND WAS TOLD A FIX WAS COMING SOON. TOOK CAR IN TO DEALER MONTHS LATER FOR A RECALL, A BCM RECALL AND AGAIN I TOLD THEM THAT THE OIL SMELLED OF FUEL AFTER 500 MILES SINCE OIL CHANGE. WAITING FOR MANAGER TO CALL ME BACK WITH UPDATE ON FIX. IT IS A 2018 HONDA ACCORD 1.5 LITR TURBO. 26,000 MILES ON MOTOR. I BOUGHT THE CAR FROM THE DEALER IN JANUARY 2020.").

- 2018 Honda Accord. NHTSA ID No. 11398662 (dated 03/02/2021) ("2018 HONDA ACCORD SEDAN 2.0 TURBO SPORT. 47,000 MILES ON ODOMETER. FUEL IS MIXING WITH ENGINE OIL UNDER NORMAL DRIVING CONDITIONS. CURRENTLY 5K INTO LAST OIL CHANGE AND THERE IS A STRONG ODOR OF GASOLINE PRESENT ON THE ENGINE OIL DIPSTICK ALONG WITH AN ODOR OF GASOLINE INSIDE THE VEHICLE ESPECIALLY WHEN THE DEFROSTER OR HEAT IS TURNED ON.").

- 2021 Honda Accord. NHTSA ID No. 11431095 (dated 08/30/2021) ("While driving in heavy rain for most of the morning, I entered an interstate and attempted to pass a semi. The engine lost power as I moved into the center lane. I had to slow down and re-enter the far right hand lane as the engine trouble light began flashing and I had either very little power or too much power to keep the car in a steady state. This out me and my wife's safety at risk as the rain was heavy, and pulling over to the shoulder did not seem to be a good idea since I could keep the car in forward motion in some way. I pulled off at the next exit and we ate lunch and apparently the car reset as the engine light quit flashing and the car acted normally after that. The dealer was approached and said, since the light was off there was nothing they could do. A TSB is out that applies to this problem but the dealer said the manufacturer was contacted and declined a repair.").

- 2021 Honda Accord. NHTSA ID No. 11434291 (dated 09/24/2021) ("While driving in heavy rain on interstate, vehicle experienced lack of power and flashing check engine light. Driver was unable to maintain speed. Pulled off at next exit and turned off. Roadside assistance was contacted immediately after pulling off.").

- 2022 Honda Accord. NHTSA ID No. 11442409 (dated 12/02/2021) ("The contact bought his goddaughter a 2022 Honda Accord. The contact stated while his goddaughter's husband was driving approximately 55 MPH, the vehicle stalled. The contact stated the brake system, the admission system, the TPMS, and vehicle assist stability warning lights were illuminated. The vehicle was not drivable. The owner towed the vehicle to the local dealer, where it was diagnosed with needing the VTC to be replaced. The vehicle was repaired however, the following day, the dealer informed the contact that the engine also needed to be diagnosed. The vehicle was not repaired. The manufacturer had been informed of the failure. The failure mileage was 22.")

101. A list of representative complaints filed with the NHTSA detailing the Engine Defect found in prior model years of the Class Vehicles that are equipped with the same 1.5 liter turbo direct injection engine includes:

- 2017 Honda CR-V. NHTSA ID No. 11078754 (dated 03/12/2018) ("I PURCHASED A 2017 CRV FROM ASHLAND HONDA AND TOYOTA IN ASHLAND, WI IN AUGUST 2017. ON FEBRUARY 23, 2018, MY CAR WHICH HAS 5500 MILES ON IT, STARTED MAKING A HORRIBLE NOISE AND BEGAN LOSING POWER WHILE ON THE HIGHWAY. THE NOISE CONTINUED THROUGHOUT THE WEEKEND. WE MADE AN APPOINTMENT WITH ASHLAND HONDA AND TOYOTA TO SERVICE THE CALL. HONDA CORPORATE AND THE SERVICE MANAGER (JERRY) AT ASHLAND HONDA AND TOYOTA DETERMINED THROUGH VIDEO CHATS AND CONFERENCE CALLS THAT THE CAMS WERE DESTROYED IN MY ENGINE. THEY BELIEVE THIS HAD TO DO WITH FUEL AND OIL MIXING AND GETTING INTO THE ENGINE. HONDA

REQUESTED THAT ASHLAND HONDA REPLACE THE HEAD OF THE ENGINE. THEY HAVE NO FIX FOR THE PROBLEM WITH THE FUEL AND OIL MIXING AND DESTROYING THE ENGINE. THE SERVICE MANAGER SAID BECAUSE THE GOVERNMENT IS INVOLVED DUE TO EMISSIONS, THIS ISSUE WILL BE CONTINUING, AND AT THIS TIME THERE IS NO FIX. HE ALSO STATED THAT CORPORATE INFORMED HIM THIS WAS A REGIONAL ISSUE DUE TO OUR CLIMATE, AND THEY ARE CURRENTLY TRYING TO FIGURE OUT A SOFTWARE FIX FOR THE PROBLEM. NO RESOLUTION AT THIS POINT. CORPORATE FURTHER STATED THAT THEY ARE SEEING THIS ISSUE WHEN THE TEMPERATURE IS BETWEEN 10 AND 30 DEGREES. I WAS OFFERED A 100,000 EXTENDED WARRANTY AND RECOMMENDED THAT I GO TO THE DEALER EVERY 500 MILES TO GET AN OIL CHANGE TO SEE IF FUEL IS MIXING WITH THE OIL. SHOCKED AT THE LACK OF RESOLUTION, I ASKED THE SERVICE MANAGER IF HONDA CORPORATE WAS COMFORTABLE GIVING ME MY CAR BACK AFTER THE CAMS WERE REPLACED WITH NO RESOLUTION, AND HE SAID YES. I DO NOT BELIEVE THIS IS ETHICAL AT ALL FOR HONDA TO NOT HAVE A FIX TO AN ENGINE PROBLEM THAT COULD ENDANGER MYSELF AND/OR MY FAMILY. THE CAR ENGINE IS BEING REPLACED WHEN PARTS ARE DELIVERED. AGAIN, NO RESOLUTION TO THE PROBLEM WITH THE OIL AND GAS COMBINING AND FIXING ISSUE.

- 2017 Honda CR-V. NHTSA ID No. 11092048 (dated 05/05/2018) ("MY NEW 2017 HONDA CRV EX THAT ONLY HAS 6850 MILES DRIVEN ON IT HAS A TERRIBLE DEFECT WITH OIL DILUTION ISSUES DUE TO FUEL LEAKING INTO THE OIL PANS CAUSING OVERFLOW AND DILUTION TO THE OIL THAT IS SUPPOSED TO BE LUBRICATING THE ENGINE. THE OIL SMELLS VERY POTENT OF FUEL AND ALMOST 1 QUART OF EXTRA FLUID WAS DRAINED FROM THE OIL PAN WHEN TAKEN INTO THE DEALER AFTER REPORTING THE ISSUE. THE DEALER AGREED THAT THERE WAS A MAJOR ISSUE WITH FUEL DILUTING INTO THE OIL BUT WERE TOLD BY THE HONDA CORPORATE TECH LINE THAT THEY WERE TO JUST REPLACE THE OIL UNTIL A FIX COMES OUT. THE DEALER TECHNICIANS ASKED ABOUT CHANGING THE FUEL INJECTORS OR MAYBE A CYLINDER HEAD REPLACEMENT BUT WERE TOLD NOT TO DO ANYTHING. IT IS NOT SAFE TO RELEASE THESE CARS BACK TO THE OWNER KNOWING THERE IS AN DEFECT ISSUE THAT THEY DIDN'T EVEN REALLY ATTEMPT TO FIX THAT IS CAUSING INTERNAL ENGINE PARTS TO BREAK DOWN FASTER THAN NORMAL AND COULD CAUSE SERIOUS SAFETY CONCERNS DUE TO EVENTUAL BREAKDOWNS LEADING TO WRECKS. THE COMPANIES \"FIX\" IS TO GO IN FOR AN OIL CHANGE EVERY 500-1000 MILES EVEN THOUGH EXCESSIVE FUEL IS STILL MIXING WITH THE OIL. HONDA HAS REPORTED THAT THIS IS HAPPENING IN COLDER CLIMATES, BUT I AM STILL HAVING MAJOR ISSUES WITH THIS IN TENNESSEE WEATHER.").

- 2017 Honda CR-V. NHTSA ID No. 11144168 (dated 10/30/2018) ("I PURCHASE A 2017 HONDA CRV-EX WITH 1.5-LITER TURBO EARTH DREAM ENGINE. DURING THE PAST 6 MONTHS I'VE BEEN HAVING THE FOLLOWING PROBLEMS WITH MY HONDA CRV-EX. GAS SMELL IN THE PASSENGER COMPARTMENT, THE OIL SMELL LIKE GAS, RISING OIL LEVELS, CAR MAKING HORRIBLE NOISES, STALLING, LOSS OF POWER AND THE HEATERS DOESN'T WORK AT ALL IN COLD WEATHER. I FIRST NOTICE THESE PROBLEMS 6 MONTHS AGO. A FRIEND OF MINE WHO PREVIOUSLY WORKED AT HONDA SAYS THAT THE PROBLEM OF FUEL MIXING WITH OIL STEMS FROM ONE OR TWO CAUSES: IMPROPERLY DESIGNED FUEL INJECTORS THAT SPRAY FUEL DIRECTLY ONTO THE CYLINDER WALLS OR THE ENGINE NOT HEATING UP ENOUGH TO VAPORIZE GASOLINE LEFT OVER IN AN ENGINE CYLINDER. EITHER COULD CAUSE FUEL TO MIX WITH THE OIL, DILUTING IT AND MAKING IT LESS EFFECTIVE AT PROTECTING AN ENGINE'S MOVING PARTS AND OVER TIME COULD SERIOUSLY DAMAGE THE ENGINE. MY BIGGEST CONCERN IS PREMATURE ENGINE FAILURE DUE TO THE LUBRICATION FUEL & OIL DILUTION. HONDA CORPORATION HAD KNOWLEDGE OF THE TURBO ENGINE DEFECTS THAT CAUSE FUEL TO ENTER THE ENGINE OIL, DAMAGING THE BEARINGS, ENGINE PERMANENTLY AND DID ABSOLUTELY NOTHING. I DO NOT BELIEVE THIS IS ETHICAL AT ALL FOR HONDA CORP. TO CONTINUE TO SELL 2017 & 2018 CRV WITH TURBO ENGINE TO THE CONSUMER KNOWING THE PROBLEMS COULD ENDANGER THE PUBLIC SAFETY. IT IS NEITHER SAFE NOR PRUDENT DRIVING THESE VEHICLES. MY TRUST IN HONDA RELIABILITY WAS CRUSHED WHEN I NOTICE AFTER MY 2ND OIL CHANGE THE COLOR WAS BLACK, THIN AS WATER AND SMELL LIKE GASOLINE AFTER ONLY 10,000 MILES. HONDA CORP. HAD TO RECALL 130,000 OF ITS POPULAR CR-V SUV MODELS AND 294,500 CIVIC CARS FROM CHINA EARLIER THIS YEAR. RECENTLY IT'S BEEN REPORTED HONDA STOPPED ALL SALES OF CRV'S IN CHINA. HONDA ACKNOWLEDGES THE PROBLEM BUT HAS NOT RELEASED ANY RESOLUTION ASIDE FROM FREE OIL CHANGES. MY ENGINE HAS ALREADY INCURRED PREMATURE WEAR.").

- 2017 Honda CR-V. NHTSA ID No. 11266439 (dated 10/04/2019) ("THE OIL LEVEL HAS CONSISTENTLY INCREASED AFTER EVERY OIL CHANGE, AND HAS HAD THE SMELL OF GASOLINE, EVEN WITHIN 1200 MILES. I HAVE BROUGHT THIS TO THE ATTENTION OF HONDA ON THREE SEPARATE OCCASIONS, BUT THE DEALERSHIP REFUSES TO ACKNOWLEDGE THE PROBLEM SINCE I LIVE IN A WARM CLIMATE AREA, AND THEY INSIST, IN THE FACE OF CLEAR EVIDENCE, THAT ONLY COLD CLIMATES HAVE THE PROBLEM. 1,168 MILES AFTER AN OIL AND FILTER CHANGE, I SMELLED GAS FROM THE DIPSTICK, SO I SENT THE OIL IN FOR ANALYSIS. THE REPORT CAME BACK WITH CRITICAL (>5%) DILUTION. THIS IS A SAFETY ISSUE, AS MANY PEOPLE

MAY NOT KNOW THAT THEIR ENGINES MAY SIEZE, OR JUST STOP RUNNING, DUE TO LACK OF LUBRICATION.").

- 2018 Honda CR-V. NHTSA ID No. 11208625 (dated 05/20/2019) ("OIL BEING DILUTED WITH GAS. HONDA ISSUED A \"SERVICE BULLETIN\" ABOUT THIS. THERE IS A YOUTUBE VIDEO ABOUT IT: HTTPS://WWW.YOUTUBE.COM/WATCH?V=FVDKNRGZGT8 WE TOOK IT IN AND THE \"FIX\" WAS A SOFTWARE UPDATE, BUT THE OIL CONTINUES TO GET DILUTED WITH GAS. WE WILL BE TAKING IT IN FOR THE 3RD TIME FOR THIS PROBLEM. IN WISCONSIN, IF THEY FAIL TO FIX THE PROBLEM IN 4 TRIES, IT BECOMES A LEMON. I DON'T WANT IT TO COME TO THAT BECAUSE I AM SURE THAT WILL BE A BIG HASSLE, BUT THE LONG TERM PROBLEMS CAUSED BY GAS IN THE OIL MAY BE WORSE. NOT WHAT I EXPECT FROM HONDA!").

- 2018 Honda Civic. NHTSA ID No. 11184928 (dated 03/07/2019) ("SUSPECTED OIL DILUTION... RECENT DEALERSHIP OIL CHANGE, LESS THAN A WEEK LATER, THE VOLUME OF \"OIL\" WAS APPROX. 1/2 INCH OVER THE TOP OF THE DIP STICK MEASUREMENT SECTION. DEALER RE-DID THE OIL CHANGE TWO WEEKS LATER, AND WE WILL CONTINUE TO OBSERVE. THE OIL DOES HAVE A STRONG SMELL OF GASOLINE... COMPARED TO OTHER VEHICLES. I AM CONCERNED ABOUT THE LONGEVITY OF THE ENGINE DUE TO EXCESSIVE WEAR RELATED TO INSUFFICIENT LUBRICATION.").

- 2018 Honda Civic. NHTSA ID No. 11244554 (dated 08/16/2019) ("2018 HONDA CIVIC HATCHBACK, GASOLINE SMELL IN CABIN OCCURRED ON 8/16/2019. 1.5L OIL DILUTION COULD BE CAUSE OF ISSUE.").

### D. Honda Knew that the Class Vehicles Suffered from the Defect Prior to Its Sale of the Class Vehicles

102. Honda, based on the facts alleged herein and on information and belief, had full knowledge of the existence of the Defect and the risk it posed to Class Vehicle owners and lessees. This knowledge is based upon, among other facts: (a) Honda's pre-sale durability testing; (b) consumer complaints posted on the internet; (c) Honda's acknowledgements of the Defect, both publicly and in internal manufacturer communications; (d) Honda dealership repair records and part sales; (e) previous recalls for Honda's 1.5-liter turbo engines; (f) NHTSA complaints; (g) Honda's post-sale defect investigations; and (h) warranty and post-warranty claims.

### 1. Honda Conducts Extensive Pre-Sale Durability Testing of the Class Vehicles, Putting Honda on Notice of the Defect

103. Honda is experienced in the design and manufacture of consumer vehicles. As an experienced manufacturer, Honda conducts tests, including pre-sale durability testing, on incoming components to verify the parts are free from defects and align with its specifications.

104. Honda emphasizes its Global Honda Quality Standard ("G-HQS"), which it claims "continuously enhances quality at every stage, encompassing design, development, production, sales and after-sales service in order to realize products offering a new level of outstanding quality." [46] Honda adds: "This initiative aims to achieve the highest quality through the creation of drawings designed to facilitate manufacturing, as well as develop manufacturing control techniques that limit process variability, by applying and reflecting design and development expertise at the production preparation and production (mass-production) stages."[47]

105. As part of this initiative, Honda "Assur[es] Long-Term Reliability through Rigorous Durability Testing":[48]

> Honda subjects new and redesigned models to a rigorous regimen of long-distance durability testing before beginning mass production to verify that there are no quality issues.
>
> Honda also disassembles vehicles used in the test drives into every single part and verifies that there are no quality issues through a process consisting of several thousand checks. By accumulating data on the issues discovered through these test drives and detailed inspections as well as associated countermeasures, the Company is

---

[46] Honda Sustainability Report 2018, at 69, https://global.honda/sustainability/cq_img/report/pdf/2018/Honda-SR-2018-en-065-078.pdf (2018) (last visited Oct. 17, 2022).

[47] *Id*.

[48] *Id*. at 71.

able to ensure a high level of quality and reliability.[49]

106.     "Honda's production departments establish manufacturing control items and criteria for each part, process and operation to prevent product quality issues[,]" conduct extensive on-site audits of its suppliers for quality assurance, and "then work[] to improve part quality through activities that emphasize communication with suppliers, for example, by sharing audit results and cooperating to identify opportunities for quality improvement."[50]

107.     In addition to the "quality assurance system" put in place by the G-HQS related to the production and manufacturing of the Class Vehicles, Honda has in place procedures to investigate "quality issues after sales"; namely, through its dealerships, which dealerships "collect quality information from customers in a timely manner."[51]

108.     Honda has an interconnected network of customer service departments worldwide which it relies upon to monitor quality control issues.

109.     As part of this network, Honda utilizes a customer relations center which "receives feedback in the form of customer questions, suggestions, requests and complaints 365 days a year."[52] And to "ensure that this valuable information is put to good use in Honda's operations, the facility shares it in a timely manner with the company's R&D, manufacturing, service and sales departments."[53]

110.     Additionally, "Honda has established a Quality Center to bring together the various

---

[49] *Id.*

[50] *Id.* at 70-71.

[51] *Id.* at 67, 69.

[52] *Id.* at 72.

[53] *Id.*

components of our organization concerned with product market quality information to enhance the functions of 'preventing quality issues' and 'quickly detecting and resolving quality issues when they occur' on a global scale." [54]

111.    Honda's California headquarters also maintains a Technical Information & Support Group ("TIS"), formerly known as  Technical Research & Support Group ("TRS"), responsible for, *inter alia*, identifying and investigating potential defects in Honda vehicles. [55]

112.    Honda also regularly monitors NHTSA databases for consumer complaints as part of its ongoing obligation pursuant to the TREAD Act, 49 U.S.C. § 30118, to identify potential defects in its vehicles. As shown above, numerous complaints filed by Class Vehicle owners with the NHTSA establish that Honda knew, or should have known, of the Defect at least as early as October 2018 (*e.g.*, NHTSA ID No. 11143633), based on publicly available information.

113.    Indeed, given Honda's history of skirting its monitoring obligations under the TREAD Act and subsequent fine, Honda was likely acutely aware of (or should have been) each NHTSA customer complaint regarding the Engine Defect. Specifically, in 2015, Honda was fined $70 million (the highest penalty allowed by Congress) by the NHTSA "for failing to report deaths, injuries, and certain warranty claims to the federal government in violation of the TREAD Act" from 2003 through 2014. As part of the Consent Order, "Honda also agreed to increased NHTSA oversight and third party audits to ensure that all required reporting is completed[.]" [56]

---

[54] *Id.* at 73.

[55] *See, e.g.*, Manufacturer Communication Number: 10152402, dated Dec. 14, 2018, *available at*  https://static.nhtsa.gov/odi/tsbs/2018/MC-10152402-0001.pdf (last visited Oct. 17, 2022).

[56]    NHTSA, *U.S. Department of Transportation Fines Honda $70 million for Failing to*

### 2. Consumer Websites and Online Car Forums Complaints Also Put Honda on Notice of the Defect

114. In addition to NHTSA complaints (detailed above), a simple google search reveals numerous customer complaints of the Engine Defect in Class Vehicles can be found on various consumer websites and online car forums.

115. On January 23, 2018, an owner of a 2018 Honda Civic posted on *https://honda-tech.com*, a website devoted to Honda vehicles, that their vehicle's oil levels were "much higher than the gauge," and of a "strong gas smell," which could not be "resolved by oil change and will cause engine damage within years" due to an "engine flaw from the design of the" vehicle's engine.[57] Another owner of a Honda civic described the Defect as "SEVERE," with the dilution measuring at "9.7%," which is significantly above the "4% [limit]," resulting in an "ABNORMAL" oil viscosity level. A different Honda owner responded that the Defect is "normal with any engine, however, not at the level that it is happening here" with Honda vehicles. A person in a separate post dated February 11, 2019 stated that Honda's suggested solutions and software updates do not solve the Defect:[58]

> The fuel dilution problem is not solved by letting your Honda 1.5l turbo warm up. And, it's not a cold weather short trip issue. I have had my oil from my 2018 CR-V Ex tested 3 times and the fuel dilution is quite severe.
>
> . . .
>
> Honda has an update which they applied to the vehicle. Now, it

---

*Comply with Laws That Safeguard the Public* (Jan. 8, 2015), https://one.nhtsa.gov/About+NHTSA/Press+Releases/2015/DOT-fines-Honda-$70-million (last visited Oct. 17, 2022).

[57] https://honda-tech.com/forums/honda-civic-2016-current-165/fuel-dilution-oil-level-increase-3314055/ (last visited Oct. 17, 2022).

[58] https://honda-tech.com/forums/honda-civic-2016-current-165/oil-dilution-problem-1-5-turbo-engines-3332346/ (last visited Oct. 17, 2022).

doesn't warm up like it used to. It starts to get to operating temperature and the temp goes down almost all the way and stays down for about 5-7 minutes. I do not know what they thought the fix was fixing.

I don't think Honda has figured out how to solve this yet. . . . they are telling the publi[c] [sic] that no heat and extreme fuel dilution and water in the oil is 'normal'. It's patently false.

116.    On February 19, 2018, another owner of a 2018 Honda CR-V posted on *https://www.carcomplaints.com* that her vehicle was emitting gas fumes. In particular, the owner recounted in detail the dangers that the Defect posed to her children: "***the kids started complaining about the smell of gas in the back seat, it was making them sick***."[59] She checked her oil dipstick and it smelled "just like gas out of the pump," "burn[ing]" her nose. She brought her vehicle to a Honda dealership. Honda was made aware of the issue but could or would not fix the Defect:[60]

Brought it into the dealer 2 days later. Engine oil was overfull by 3/4 quart due to fuel dilution. Changed engine oil and filter. ***Dealer advised I'm one of over 50 people at this dealership with this issue.*** Further advised I was one of the "lucky" ones since my car didn't stall, strand me, and/or engine light didn't come on. Some have had to have work done due to damage. Dealer advised Honda had no clue, and for me to check my oil if I smelled fuel again.

***I opened a case up this same day with Honda,*** #06702985. Case mgr called me on 2/22 and I missed the call. I called back and left a message. ***Never heard from Honda until after my next incident***…

117.    The owner of a 2018 Honda CR-V experienced similar dissatisfaction with Honda's customer service, recounting that he, too, had the Defect that "so many other CRV owners have complained about."[61] The Honda dealership acknowledged the Defect but said there was no fix

---

[59] https://www.carcomplaints.com/Honda/CR-V/2018/engine/fuel_in_oil_with_overfilled_oil_level_gas_smell_in_cabin-3.shtml (last visited Oct. 17, 2022).

[60] *Id.*

[61] *Id.*

and that "Honda will come up with something." This individual alleged he "registered a complaint with the National Highway Transportation Safety Administration," and encouraged other owners to "do the same to try to get some pressure applied to Honda. Go to NHTSA.com and register your complaint."

118.    Another consumer or member of the public complained on July 17, 2020 that Honda's attempts at repair did not fix the Defect: "There's a HUGE thread here. Yes oil dilution is real and you may or may not experience it, but there's a good chance. Honda has a defective design with their turbo engines and are trying bandaid solutions. . . . My suggestion. STAY AWAY from any turbo honda."[62]

119.    On October 15, 2018, the owner of a 2018 CR-V complained that her vehicle "had a terrible smell of gasoline in the cabin."[63] Upon checking, she found that the oil was "diluted and overfilled." She was denied a free oil change and told to contact Honda Corporation, which allegedly misrepresented her complaint as being "because [she] did not get a free oil change." This consumer eventually received a replacement of vehicle's PCV valve, fuel injectors and all cabin filters, however she was told it was "not a repair but an update to enhance the performance of [her] car." After driving 890 miles with the new parts, her cabin again filled with a strong fuel smell and the issue remained.

120.    On the Honda Civic forum website *https://www.civicx.com*, one owner reported experiencing the Defect as early as October 2017, and receiving no fix from their dealership. That

_____

[62] https://forums.redflagdeals.com/honda-cr-v-2017-2020-oil-dilution-should-i-buy-2390116/ (last visited Oct. 17, 2022).

[63] https://www.carcomplaints.com/Honda/CR-V/2018/engine/fuel_in_oil_with_overfilled_oil_level_gas_smell_in_cabin-2.shtml (last visited Oct. 17, 2022).

person wrote, "I reported this problem to Honda America in October of 17. I've been to my dealership 3x for oil too high in the engine. (Oct 17, April 18 & Sept 18). They know of this problem especially with my car. I'm now waiting for what the fix will be . . . ." [64]

121.    On the popular forum website *https://www.reddit.com/* under the "Honda" message board, one user wrote on July 1, 2022, "I've worked at a Honda dealer for the past couple years. You all have no idea how many times I said 'boy that's a lot of gas in there…that cannot be good for the engine…' yet everyone above me said it was 'normal'. Normal ≠ it's ok. It's a problem."[65]

122.    On information and belief, Honda had knowledge of the complaints on *https://honda-tech.com*, *https://www.carcomplaints.com*, *https://www.civicx.com*, and *https://www.reddit.com/r/Honda/* regarding the Engine Defect as several of the posts reference making complaints to the NHTSA and reporting the issues directly to Honda dealerships, including one cited above reporting the Defect to Honda Corporation, providing Honda with direct knowledge of the Defect and the hazards associated with the Defect.

### 3.  Honda Acknowledged the Defect in Its Own YouTube Videos

123.    Honda is and has been well aware of the Defect, to the point that the automaker uploaded a video to its YouTube channel titled "2017-2018 Honda CR-V: Understanding Oil Dilution." The function for viewers to comment on the video has been turned off.[66]

---

[64] https://www.civicx.com/forum/threads/it-seems-like-the-chinese-recall-for-oil-dilution-is-making-its-way-stateside.29132/page-2 (last visited Oct. 17, 2022).

[65] https://www.reddit.com/r/Honda/comments/vp22c4/oil_dilution_want_to_get_to_the_bottom_of_this/ (last visited Oct. 17, 2022).

[66] https://www.youtube.com/watch?v=fVdKNRgzGT8 (last visited Oct. 17, 2022).



124.     In the video, the narrator misleadingly describes the Defect as a "normal occurrence" and mentions none of the dangerous hazards that can result from the Engine Defect.

125.     Indeed, Honda disregards the known risks of the Defect and often instructs its consumers to continue to drive their Class Vehicles and simply change the engine oil more frequently, in some instances recommending drivers change their Vehicle's oil every 500 miles.[67]

126.     A similar video exists from the Smail Honda YouTube account.[68] Smail Honda is an authorized Honda dealer located in Greensburg, PA. In that video, uploaded February 28, 2020, Smail Honda acknowledges that the Engine Defect "is true," but claims there are "no issues" with

---

[67] *See* ¶ 108, NHTSA ID Nos. 11078754, 11092048.

[68] https://www.youtube.com/watch?v=IZqpseKHhuI (last visited Sept. 28, 2022).

Honda's 2019-2020 vehicle models, and that the Civic 2016-2018 and CR-V 2017-2018 vehicles with 1.5 liter turbo engines have been "recalled and fixed" via a "simple software issue." He further states that Honda solved the issue "right away," and is a "dependable" "reliable" company.[69]

127.     In response to this video, one Honda CR-V owner noted that Honda's alleged software update solution failed to solve the Engine Defect and that he or she has discussed the issue with a Honda dealership:[70]



128.     Another person commented on Smail Honda's YouTube video, noted that there are "thousands of complaints" relating to the Defect in 2019-2020 CR-V vehicles:[71]



129.     One 2016 Honda Civic owner detailed the hassle and additional costs he incurred trying to mitigate the Engine Defect, while a 2018 Honda owner reported that he still experienced the Defect even after Honda's alleged software update solution:

---

[69] *Id.*

[70] *Id.*

[71] *Id.*



130.    On information and belief, Honda reviews third-party websites, including those dedicated to their vehicles, in order to monitor potential defects in their vehicles and to provide feedback to consumer complaints. For example, "Honda Automobile Customer Service[,] American Honda Motor Co., Inc." (username "HondaCustSrvc") directly responded to a post concerning a potential defect found in Honda CRV models on a consumer message board dedicated to that model, *CRVOwnersClub.com*:[72]

> Hello Pip3754,
>
> We are with American Honda Customer Service. We are sorry to hear about your CRV battery issues and your experience with your local Honda dealership. We would like to further review your concern. Can you please contact us and provide your contact information with VIN #. We look forward to hearing from you.
>
> Thank you,
>
> Dillon
> Honda Automobile Customer Service
> American Honda Motor Co., Inc.
> 1919 Torrance Blvd.
> Torrance, CA 90501
> Contact Options:
> Twitter: @HondaCustSvc
> Automobile Customer Service Phone Number: 1-800-999-1009 opt. 7

131.    In another example, Honda Automobile Customer Service (Twitter handle

---

[72] *See, e.g.*, https://www.crvownersclub.com/threads/2017-crv-battery-going-dead-overnight.135193/ (May 15, 2017 post by "Honda Automobile Customer Service[,] American Honda Motor Co., Inc." in response to customer complaint concerning potential defect) (last visited Sept. 28, 2022).

"@HondaCustSvc") routinely directly responds to posts requesting help on social media page *https://twitter.com*. One such example is below:[73]



### 4. Honda Monitors Repairs and Services Under Warranty

132.    On information and belief, Honda's customer relations department, which interacts with authorized service technicians in order to identify potentially widespread vehicle problems and assists in the diagnosis of vehicle issues, has received numerous reports of the Engine Defect. Customer relations also collects and analyzes field data, including, but not limited to, repair requests made at dealerships and service centers, technical reports prepared by engineers that have reviewed vehicles for which warranty coverage is requested, parts sales reports, and warranty claims data.

133.    Honda's warranty department similarly reviews and analyzes warranty data submitted by its dealerships and authorized technicians in order to identify defect trends in its vehicles.

134.    On information and belief, NHTSA complaints typically account for a mere fraction of warranty claims related to the same issue.

135.    Honda dictates that when a repair is made under warranty (or warranty coverage is

---

[73] https://twitter.com/HondaCustSvc/status/941001333154504704 (last visited Oct. 17, 2022).

requested), service centers must provide Defendant with detailed documentation of the problem and the fix that describes the complaint, cause, and correction, and also save the broken part in case Honda later determines to audit the dealership or otherwise verify the warranty repair.

136.     For their part, service centers are meticulous about providing this detailed information about in-warranty repairs to Honda because Honda will not pay the service centers for the repair if the complaint, cause, and correction are not sufficiently described.

137.     Honda knew or should have known about the Engine Defect because of the high number of supplemental oil changes beyond the recommended amounts that is reasonable to infer were reported to Honda as well as the replacement parts it is reasonable to infer were ordered from Honda. All of Honda's service centers are required to order replacement parts, including engine bearings and connecting rods, directly from Honda. Other independent vehicle repair shops that service Class Vehicles also order replacement parts directly from Honda.

138.     Honda routinely monitors part sales reports and is responsible for shipping parts requested by dealerships and technicians. Thus, Honda has detailed, accurate, and real-time data regarding the number and frequency of replacement part orders. The increase in orders of auto-parts necessary to fix damage caused by the Engine Defect to the Class Vehicles was known to Defendant and should have alerted it to the scope and severity of the Defect.

### 5.    Honda Issued Dealer Messages, Product Updates and Warranty Extensions Related to the Engine Defect in 1.5-liter turbo engines

139.     Honda's knowledge of the Engine Defect is also revealed through its investigations into the Defect and its communications sent to Honda dealerships relating to the Defect at least as early as October 2018.

140.     In an October 22, 2018 "Dealer Message" sent to "All Honda Parts & Service Managers, Advisors, and Personnel," Honda's manager of auto campaigns and recalls, Brad

Ortloff, announced "a product update campaign for certain 2017-2018 CR-V vehicles with the 1.5-liter turbo engine, which was intended to "addresses concerns related to engine oil dilution" found in the engine model.[74] Ortloff attributed the dilution problem in 2017-2018 CR-V models to cold weather, software settings, and even hardware failures, but never acknowledged the inherent defect found in Honda's 1.5-liter engines.[75] The Dealer Message suggests a series of repairs, including oil change, replace the air conditioning control unit, and reset the maintenance minder.

141.　Ortloff stated in the message that excessive oil dilution typically results in one of four DTC numbers: DTC P0300 (random misfire detected); P0301 (No. 1 cylinder misfire detected); P0302 (No. 2 cylinder misfire detected), P0303 (No. 3 cylinder misfire detected); P0304 (No. 4 cylinder misfire detected), or P0172 (fuel system too rich). A Diagnostic Trouble Code (or DTC) is a code used to diagnose malfunctions in a vehicle. While the malfunction indicator lamp located on a car's dashboard alerts drivers that there is an issue, a DTC identifies what and where the issue is. DTCs are also called engine vehicle fault codes and can typically only be read with a scanner that plugs directly into the port of a vehicle.

142.　Notably, Honda is aware that the October 2018 Dealer Message and proposed remedies fail to correct the Engine Defect found in the Class Vehicles. Even after the product update campaign was issued and dealers applied the "repairs" to the 2017-2018 CR-V vehicles, drivers continued to report incidents of oil dilution.[76]

143.　A few months later on December 14, 2018, Honda's Parts and Services Division issued a similar manufacturer communication titled "Understanding Oil Dilution," to its Honda

---

[74] *See supra* n.3.

[75] *Id*.

[76] *See, e.g.*, NHTSA ID Nos. 11144168, 11208625.

dealership service managers, shop foremen, and all service consultants. Therein, Honda announced a product update campaign for certain 2017-18 CR-V vehicles with the 1.5L turbo engine that were sold in certain cold-weather states. This product update "addresse[d] concerns related to engine oil dilution due to various control unit software/threshold settings."[77]

144. Seven days later, on December 21, 2018, Honda expanded the scope of the Manufacturer Communication, bearing the subject "2016-2018 Civic Engine Oil Dilution Product Update," and extending software updates to "certain 2016-2018 Civic vehicles with the 1.5L turbo engine."[78]

145. In December 2018, Honda Canada Vice President of Parts and Services, Dave Jamieson, sent a Product Update and Warranty Extension notice to Honda owners, notifying them that "some 2016-2018 Civic vehicles equipped with a 1.5L turbo direct-injection engine . . . may become overly diluted with fuel and moisture," resulting in "engine misfire," "check engine light," and "abnormal noise from the engine camshaft." Honda Canada recommended software updates and offered a free oil change. The notice also extended the warranty on "certain engine components" to six years, including coverage of engine repairs required as a result of excess oil dilution.[79]

146. On April 5, 2019, Brad Ortloff issued another manufacturer communication titled "2016-18 Honda Civic and 2017-18 CR-V Engine Oil Dilution Drivability Concerns W.E.," to its Honda dealership parts & service managers, advisors, and personnel. Therein, Honda warned of "concerns related to engine oil dilution," which may result in "lack of power, . . . cylinder misfire,

---

[77] https://static.nhtsa.gov/odi/tsbs/2018/MC-10152402-0001.pdf (last visited Oct. 17, 2022).

[78] https://static.nhtsa.gov/odi/tsbs/2018/MC-10152439-0001.pdf (last visited Oct. 17, 2022).

[79] *See supra* n.4.

. . . or a whirling noise from the engine," and announced that "certain 2016-2018 Civic and 2017-18 CR-V vehicles" would receive a warranty extension from the original 5 years/60,000 miles to 6 years/unlimited miles from the original date of sale. Notably, the Manufacturer Communication states that the "majority of vehicles will require only a software update," discounting whether replacement parts, "if any," are needed.[80]

147.    On June 15, 2021, Honda issued a "Dealer Message" to "[a]ll Honda Service Managers/Advisors," notifying them that Honda's TIS Group was investigating "certain 2018-2021 Accord 1.5Ts, Civic Sis & CR-Vs with a customer complaint of the Malfunction Indicator Light (MIL) on with the DTC P030X (Cylinder Misfire Detected) or P0172 (Fuel System Too Rich) stored."[81] Honda did not notify Class Vehicle owners in its June 15, 2021 Dealer Message of its investigation concerning this "condition" related to oil dilution and engine failures. In fact, Honda specifically warned its personnel that "*[the] message is solely directed to Honda dealership personnel; please handle accordingly.*"[82]

148.    The same Dealer Message was issued again on July 1, 20, 2021 and August 9, 2021. On August 25, 2021; September 10, 27, October 13, 20, 30, November 16, 29, 2021; January 3, 22, and February 8, 2022, the same Dealer Message was issued, but was limited to 2018-2021 Accord and CR-V vehicles.[83] And the same message was sent on February 11 and 28, 2022, but was

---

[80] https://static.nhtsa.gov/odi/tsbs/2019/MC-10158743-0001.pdf (last visited Sept. 28, 2022).

[81] Manufacturer Communication Number: ATI&06152021904, dated June 15, 2021, *available at* https://static.nhtsa.gov/odi/tsbs/2021/MC-10198177-0001.pdf.

[82] Manufacturer Communication Number: ATI&06152021904, dated June 15, 2021, *available at* https://static.nhtsa.gov/odi/tsbs/2021/MC-10198177-0001.pdf.

[83] Manufacturer Communication Number: ATI&07012021, dated July 1, 2021, *available at* https://static.nhtsa.gov/odi/tsbs/2021/MC-10199318-0001.pdf; Manufacturer Communication Number: ATI&07202021901, dated July 20, 2021, *available at* https://static.nhtsa.gov/odi/tsbs/2021/MC-10199453-0001.pdf; Manufacturer Communication

limited to 2018-2021 Accord vehicles.[84]

149. On June 7, 2022, Honda issued a "Dealer Message" to "[a]ll Honda Service Managers/Advisors," notifying them that Honda's TIS Group was "investigating certain 2019-2022 Accord 1.5T & 2020-2022 1.5T CR-Vs with a customer complaint of the Malfunction Indicator Light (MIL) on with the DTC P030X (Cylinder Misfire Detected) or P0172 (Fuel System Too Rich) stored."[85] Again, Honda specifically warned its personnel that "*[the] message is solely directed to Honda dealership personnel; please handle accordingly.*"

---

Number: ATI&08092021901, dated August 9, 2021, *available at* https://static.nhtsa.gov/odi/tsbs/2021/MC-10200411-0001.pdf; Manufacturer Communication Number: ATI&08252021909, dated August 25, 2021, *available at* https://static.nhtsa.gov/odi/tsbs/2021/MC-10200845-0001.pdf; Manufacturer Communication Number: ATI&09102021909, dated September 10, 2021, *available at* https://static.nhtsa.gov/odi/tsbs/2021/MC-10201454-0001.pdf; Manufacturer Communication Number: ATI&09272021, dated September 27, 2021, *available at* https://static.nhtsa.gov/odi/tsbs/2021/MC-10202037-0001.pdf; Manufacturer Communication Number: ATI&10132021, dated October 13, 2021, *available at* https://static.nhtsa.gov/odi/tsbs/2021/MC-10202324-0001.pdf; Manufacturer Communication Number: ATI&10202021902, dated October 20, 2021, *available at* https://static.nhtsa.gov/odi/tsbs/2021/MC-10202600-0001.pdf; Manufacturer Communication Number: ATI&10302021, dated October 30, 2021, *available at* https://static.nhtsa.gov/odi/tsbs/2021/MC-10202907-0001.pdf; Manufacturer Communication Number: ATI&11162021904, dated November 16, 2021, *available at* https://static.nhtsa.gov/odi/tsbs/2021/MC-10203631-0001.pdf; Manufacturer Communication Number: ATI&11292021905, dated November 29, 2021, *available at* https://static.nhtsa.gov/odi/tsbs/2021/MC-10203796-0001.pdf; Manufacturer Communication Number: ATI&01032022905, dated January 3, 2022, *available at* https://static.nhtsa.gov/odi/tsbs/2022/MC-10206440-0001.pdf; Manufacturer Communication Number: ATI&01222022, dated January 22, 2022, *available at* https://static.nhtsa.gov/odi/tsbs/2022/MC-10206789-0001.pdf; Manufacturer Communication Number: ATI&02082022, dated February 8, 2022, *available at* https://static.nhtsa.gov/odi/tsbs/2022/MC-10208090-0001.pdf.

[84] Manufacturer Communication Number: ATI&02112022902, dated February 11, 2022, *available at* https://static.nhtsa.gov/odi/tsbs/2022/MC-10208092-0001.pdf; Manufacturer Communication Number: ATI&02282022, dated February 28, 2022, *available at* https://static.nhtsa.gov/odi/tsbs/2022/MC-10208404-0001.pdf.

[85] Manufacturer Communication Number: APAS06072022901, dated June 7, 2022, *available at* https://static.nhtsa.gov/odi/tsbs/2022/MC-10215487-0001.pdf.

150. The same Dealer Message was issued again on July 5, 2022.[86] On July 21, 2022,[87] and August 16, 2022,[88] Honda issued the same Dealer Message, but expanded its scope to include 2019 CR-V vehicles.

### 6. Honda has recalled vehicles equipped with its 1.5-liter turbo engines due to the Engine Defect

151. The previously detailed United States and Canadian product updates are not the first instances in which Honda has been confronted with the Engine Defect.

152. On or about February 12, 2018, after numerous reports of high engine oil level and fuel smells reported by Honda customers in northern China, HML's joint venture with China's Dongfeng Motor Group Co. Ltd. ordered a recall of approximately 350,000 2018 CR-V and 2017 Civic vehicles equipped with a 1.5-liter turbo engine.[89]

153. On information and belief, the 1.5-liter turbo engine installed in Honda vehicles sold in China, and overseas, are identical to those found in the Class Vehicles.

154. Initially, Dongfeng Honda proposed a recall plan that included draining and replacing the engine oil, providing a software upgrade in the electronic control unit, an extend warranty to six years or 200,000 kilometers, and carrying out further research.[90] That recall plan

---

[86] Manufacturer Communication Number: APAS07052022901, dated July 5, 2022, *available at* https://static.nhtsa.gov/odi/tsbs/2022/MC-10216870-0001.pdf.

[87] Manufacturer Communication Number: ATI&07212022901, dated July 21, 2022, *available at* https://static.nhtsa.gov/odi/tsbs/2022/MC-10216890-0001.pdf.

[88] Manufacturer Communication Number: ATI&08162022902, dated August 16, 2022.

[89] *See supra* n. 5. https://www.reuters.com/article/us-honda-china-recall/honda-stops-selling-new-cr-vs-in-china-after-recall-plan-rejected-idUSKCN1GE1P8 (last visited Oct. 17, 2022).

[90] https://www.fuelsandlubes.com/chinas-dongfeng-honda-automobile-to-issue-recall-due-to-lubricant-related-issues/ (last visited Oct. 17, 2022).

was reportedly rejected by China's General Administration of Quality Supervision, Inspection and Quarantine due to concerns that the plan would not fully resolve the oil dilution issue.[91]

> As a result, in approximately March 2018, Dongfeng Honda was forced to suspend the sale of 2018 CR-Vs in response to oil dilution problems while it revised its recall plan, and it was reported that it "may have to do the same with its Civic model."[92]

155. Chinese authorities approved Honda's revised recall plan in May 2018 "likely . . . after Honda managed to prove that the replaced parts and upgraded engine control unit software could withstand various temperature conditions," and vehicle recalls began on May 22, 2018.[93]

### 7. NHTSA Complaints Put Honda on Notice of the Defect

156. Honda also regularly monitors NHTSA databases for consumer complaints as part of its ongoing obligation pursuant to the TREAD Act, 49 U.S.C. § 30118, to identify potential defects in its vehicles. As shown in Section IV(E), numerous complaints filed by Class Vehicle owners with the NHTSA establish that Honda knew, or should have known, of the Defect at least as early as October 2018 (*e.g.*, NHTSA ID No. 11143633), based on publicly available information.

### E. Honda Breached the Express Warranties Covering the Class Vehicles

157. The Class Vehicles sold and leased by Honda included a written express warranty, which provides: "All new Honda vehicles are covered by a 3-Year/36,000-Mile New Vehicle

---

[91] https://www.yicaiglobal.com/news/dongfeng-honda-suspends-sales-after-warning-from-quality-regulator (last visited Oct. 17, ,2022).

[92] *See* https://www.reuters.com/article/us-honda-china-recall/honda-stops-selling-new-cr-vs-in-china-after-recall-plan-rejected-idUSKCN1GE1P8 (last visited Oct. 17, 2022).

[93] https://asia.nikkei.com/Business/Companies/Honda-to-resume-sales-of-China-flagship-CR-V (last visited Oct. 17, 2022).

Limited Warranty, plus a 5-Year/60,000-Mile Powertrain Limited Warranty."[94] Both warranties are applicable to the Engine Defect; however, Honda has failed to correct the issue.

158.    Under the terms of the New Vehicle Limited Warranty, Honda is required to "repair or replace any part that is defective in material or workmanship under normal use."[95]

159.    Each Class Vehicle's original engine is included in the New Vehicle Limited Warranty. This includes "[c]ylinder block and head and all internal parts, timing gears and gaskets, timing chain/belt and cover, flywheel, valve covers, oil pan, oil pump, intake and exhaust manifolds, engine mounts, engine/powertrain control module, water pump, fuel pump, seals and gaskets."[96]

160.    The New Vehicle Limited Warranty period begins once "[t]he vehicle is delivered to the first purchaser by a Honda automobile dealer" or "[t]he vehicle is leased."[97]

161.    Buyers and lessees have no pre-sale/lease knowledge or ability to bargain as to the terms of the warranties.

162.    Honda breached these warranties by, *inter alia*, failing to recall, repair, or remedy the Engine Defect in the Class Vehicles. Class members, including Plaintiff Phelps, complained to authorized Honda dealerships and technicians about the Engine Defect, but did not receive an adequate repair, breaching the express and implied warranties provided by Honda.

---

[94] https://automobiles.honda.com/cr-v?source=https%3a%2f%2fautomobiles.honda.com%2fcr-v%2fwarranty&statusCode=302# (last visited Oct. 17, 2022).

[95] https://owners.honda.com/Documentum/Warranty/Handbooks/2019_Honda_Warranty_Basebook_AWL07531_Petrol_Hybrid_PHEV__SIS.pdf, at 9 (last visited Sept. 19, 2022).

[96] *Id*. at 10.

[97] *Id*. at 11.

163.    Honda's attempt to disclaim or limit these express warranties vis-à-vis consumers is unconscionable and unenforceable here. Specifically, Honda's warranty limitation is unenforceable because it knowingly sold or leased a defective product without informing consumers about the Defect. The time limits contained in Honda's warranty periods were also unconscionable and inadequate to protect Plaintiff and other Class members. Among other things, Plaintiff and other Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Honda. A gross disparity in bargaining power existed between Honda and other Class members, and Honda knew of the Defect at the time of sale.

## V.    TOLLING OF STATUTES OF LIMITATION

164.    Any applicable statute(s) of limitations has been tolled by Honda's knowing and active concealment and denial of the facts alleged herein. Plaintiffs and members of the Class could not have reasonably discovered the true, latent defective nature of the Defect until shortly before this class action litigation was commenced. Plaintiffs' claims were thus tolled pursuant to the discovery rule and for fraudulent concealment.

### A.  Discovery Rule

165.    As shown by Plaintiffs' experiences alleged above, Class members had no way of knowing about the Engine Defect in their Class Vehicles. Defendant concealed its knowledge of the Defect (as evidenced by the Service Bulletins, detailed above) while continuing to market and sell the Class Vehicles as safe, high-quality, and reliable vehicles.

166.    Within any applicable statutes of limitation, Class members could not have discovered through the exercise of reasonable diligence that Honda was concealing the conduct complained of herein and misrepresenting the true qualities of the Class Vehicles. As detailed above, Class members acted reasonably and diligently in attempting to find the source of their engine issues.

67

167. Class members did not know facts that would have caused a reasonable person to suspect that there was an Engine Defect affecting their vehicle's engine and an ordinary person would be unable to appreciate that the vehicle was defective.

168. For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to the claims in this litigation.

## B. Fraudulent Concealment

169. Defendant was under a continuous duty to disclose to Class members the existence of the Engine Defect found in the Class Vehicles, including that it would result in diminished resale value of the Class Vehicles and require costly repairs.

170. Defendant recklessly disregarded the true nature, quality, and character of the Class Vehicles by failing to disclose the existence of the Engine Defect.

171. The statute of limitations on any counts alleged in this action are tolled during the relevant period alleged herein due to Defendant's concealment of the adverse facts concerning the Engine Defect.

172. Defendant actively concealed from Class members the truth about the engine oil and related engine issues as described herein.

173. As shown by Plaintiffs' experiences alleged above, Class members were not at fault for failing to discover the relationship between the Engine Defect and their engine, oil, and engine-related vehicle issues. Plaintiffs had no actual or presumptive knowledge of facts sufficient to put them on inquiry notice of such a relationship. This ignorance of the true cause of the engine, oil, and engine-related vehicle issues is common across Plaintiffs and each Class member.

## VI.    CLASS ALLEGATIONS

174. Plaintiffs bring this action pursuant to Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and all others similarly situated.

175.     Plaintiffs seek to represent a class ("Nationwide Class") defined as:

>   All persons in the United States and its territories who purchased
>   or leased a model year 2019-2023 Honda CR-V, 2019-2022 Honda
>   Civic, and 2018-2022 Honda Accord vehicle equipped with a 1.5-
>   liter turbo direct injection engine.

176.     In addition, and in the alternative to the above, Plaintiff Wolf seeks to represent a

class ("Illinois Class") defined as:

>   All persons who purchased or leased a model year 2019-2023
>   Honda CR-V, 2019-2022 Honda Civic, and 2018-2022 Honda
>   Accord vehicle equipped with 1.5-liter turbo direct injection
>   engine in the State of Illinois.

177.     In addition, and in the alternative to the above, Plaintiff Phelps seeks to represent a

class ("Minnesota Class") defined as:

>   All persons who purchased or leased a model year 2019-2023
>   Honda CR-V, 2019-2022 Honda Civic, and 2018-2022 Honda
>   Accord vehicle equipped with 1.5-liter turbo direct injection
>   engine in the State of Minnesota.

178.     Excluded from the Nationwide Class, Illinois Class, and the Minnesota Class

(collectively, "Classes") are Honda, its affiliates, employees, officers, and directors, persons or

entities that purchased the Class Vehicles for resale, and the Judge(s) assigned to this action.

Plaintiff reserves the right to modify, change, or expand the Class definitions based on discovery

and further investigation.

179.     <u>Numerosity</u>: The Classes are so numerous that joinder of all members is

impracticable. While the exact number and identities of individual members of the Classes are

unknown at this time, such information being in the sole possession of Defendant, Plaintiffs

believe, and on that basis allege, that approximately 3.2 million Class Vehicles have been sold

and/or leased in the United States.

180.     <u>Existence and Predominance of Common Questions of Law and Fact</u>: Common

questions of law and fact exist as to all members of the Classes. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

181. whether the Class Vehicles were sold with the Defect;

182. whether Defendant engaged in the conduct alleged herein;

183. whether Defendant advertised, marketed, distributed, leased, sold, or otherwise placed the Class Vehicles into the stream of commerce in the United States;

184. whether Defendant knew of the Engine Defect but failed to disclose the problem and its consequences to its customers;

185. whether a reasonable consumer would consider the Engine Defect or its consequences to be material;

186. when Defendant discovered the Engine Defect in the Class Vehicles, and what, if anything, it did in response;

187. whether Defendant should be required to fully disclose the existence of the Engine Defect;

188. whether Defendant breached its express and/or implied warranties with respect to the Class Vehicles;

189. whether Defendant's conduct violates the consumer protection statutes;

190. whether Defendant's conduct violates state law;

191. whether Plaintiffs and Class members received the benefit of the bargain when they purchased or leased their Class Vehicles;

192. whether Plaintiffs and Class members overpaid for their Class Vehicles;

193. whether Plaintiffs and Class members suffered ascertainable loss of monies and/or

property and/or value, and if so, how much;

194.     whether Plaintiffs and Class members suffered an increased cost of maintenance related to the Class Vehicles, and if so, how much;

195.     whether Defendant was unjustly enriched; and

196.     whether Plaintiffs and Class members are entitled to monetary damages and/or other remedies and, if so, the nature of any such relief.

197.     <u>Typicality</u>: Plaintiffs' claims are typical of the claims of the Classes because Plaintiffs purchased Class Vehicles with the same Defect as did each member of the Classes. Furthermore, Plaintiffs and all members of the Classes sustained monetary and economic injuries, including, but not limited to, ascertainable losses arising out of Honda's wrongful conduct. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class members.

198.     <u>Adequacy</u>: Plaintiffs are adequate representatives because their interests do not conflict with the interests of the Classes that they seek to represent, they have retained counsel competent and highly experienced in complex class action litigation, and they intend to prosecute this action vigorously. The interests of the Classes will be fairly and adequately protected by Plaintiffs and their counsel.

199.     <u>Superiority</u>: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and members of the Classes. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Honda's conduct. It would be virtually impossible for members of the Classes individually to redress effectively the wrongs done to them. Even if the members of the Classes could afford such individual litigation,

the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the Court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court. Upon information and belief, members of the Classes can be readily identified and notified based on, *inter alia*, Honda's vehicle identification numbers, warranty claims, registration records, and database of complaints.

200.     Declaratory and Injunctive Relief: Honda has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Classes as a whole.

201.     Defendant has acted, and refused to act, on grounds generally applicable to the Classes, thereby making appropriate final equitable relief with respect to the Classes as a whole.

## VII.     CAUSES OF ACTION

### COUNT I: VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
### (15 U.S.C. § 2301, *et seq*.)
### (On Behalf of the Nationwide Class)

202.     Plaintiffs incorporate by reference every allegation set forth in preceding paragraphs as if fully stated herein.

203.     Plaintiffs bring this claim on behalf of themselves and the Nationwide Class.

204.     This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 1332(a)-(d).

205.     The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). Plaintiffs and Nationwide Class members are consumers

because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its implied warranties.

206. Honda is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

207. 15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with an implied warranty.

208. Honda provided Plaintiffs and Nationwide Class members with an implied warranty of merchantability in connection with the purchase or lease of their vehicles that is an "implied warranty" within the meaning of the Magnuson- Moss Warranty Act, 15 U.S.C. § 2301(7). As a part of the implied warranty of merchantability, Honda warranted that the Class Vehicles were fit for their ordinary purpose and would pass without objection in the trade as designed, manufactured, and marketed, and were adequately contained, packaged, and labeled.

209. Honda breached its implied warranties, as described herein, and is therefore liable to Plaintiffs under 15 U.S.C. § 2310(d)(1). Without limitation, the Class Vehicles share a common defect in that they are all equipped with a defect in design and manufacturing of the 1.5-liter turbo direct injection engines, which cause fuel to contaminate and dilute the oil compartment, resulting unlubricated engine components, reduced engine efficiency, excess engine wear, increased upkeep and repair costs, noxious gasoline fumes, and in the worst cases, catastrophic engine failure and even stalling while driving. This results in an unreasonable risk of death, serious bodily harm, and property damage to owners and lessees of the Class Vehicles. The Engine Defect rendered the Class Vehicles unmerchantable and unfit for their ordinary use of driving when they were sold or leased, and at all times thereafter.

210. As discussed herein, on information and belief, Honda knew or should have known

about the Engine Defect prior to sale based upon, among other facts: (a) Honda's pre-sale durability testing; (b) consumer complaints posted on the internet; (c) Honda's acknowledgements of the Defect, both publicly and in internal manufacturer communications; (d) Honda dealership repair records and part sales; (e) previous recalls for Honda's 1.5-liter turbo engines; (f) NHTSA complaints; (g) Honda's post-sale defect investigations; and (h) warranty and post-warranty claims.

211. Honda omitted information about the Engine Defect and its consequences from Plaintiffs and Class members, misrepresented the qualities of the Class Vehicles, and has failed to provide a fix for the Defect.

212. Any effort by Honda to limit the implied warranties in a manner that would exclude coverage of the Class Vehicles is unconscionable, and any such effort to disclaim or otherwise limit such liability is null and void.

213. Any limitations Honda might seek to impose on its warranties are procedurally unconscionable. There was unequal bargaining power between Honda and Plaintiffs, because, at the time of purchase and lease, Plaintiffs had no other options for purchasing warranty coverage other than directly from Honda.

214. Any limitations Honda might seek to impose on its warranties are substantively unconscionable. Honda knew or should have known that the Class Vehicles were defective and that the Class Vehicles suffered from a safety defect and placed drivers at risk when used as intended long before Plaintiffs and Class members knew or should have known. Honda failed to disclose this defect to Plaintiffs and Class members. Thus, enforcement of the durational limitations on the warranties is harsh and would shock the conscience.

215. Plaintiffs and other Class members have had sufficient direct dealings with either

Defendant or its agents (*e.g.*, dealerships, consumer affairs departments, and technical support) to establish privity of contract between Defendant on one hand, and Plaintiffs and each of the other Class members on the other hand. Nonetheless, privity is not required here because Plaintiffs and each of the other Class members are intended third-party beneficiaries of contracts between Defendant and their dealers, and specifically, of Defendant's implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumers only. Defendant was also aware that the ultimate consumers of the Class Vehicles (*i.e.*, the Class) required vehicles that would function safely, could be relied upon, and otherwise meet minimum industry standards. Additionally, privity is excused here because Plaintiffs and each of the other Class members relied on statements made by Defendant itself in choosing to purchase or lease a Class Vehicle. As alleged herein, the marketing of the Class Vehicles was uniform, and was controlled and disseminated directly by Defendant.

216. Under 15 U.S.C. § 2310(e), Plaintiffs are entitled to bring this class action and are not required to give Honda notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiffs under Rule 23 of the Federal Rules of Civil Procedure.

217. Plaintiffs would suffer economic hardship if they returned their Class Vehicles but did not receive the return of all payments made by them. Because Honda will not acknowledge any revocation of acceptance and immediately return any payments made, Plaintiffs have not re-accepted their Class Vehicles by retaining it.

218. The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of

interest and costs, computed based on all claims to be determined in this lawsuit. Plaintiffs, individually and on behalf of all other Nationwide Class members, seek all damages permitted by law, including diminution in value of the Class Vehicles, in an amount to be proven at trial. In addition, under 15 U.S.C. § 2310(d)(2), Plaintiffs are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiffs and Nationwide Class members in connection with the commencement and prosecution of this action.

219.    Plaintiffs also seek the establishment of a Honda-funded program for Plaintiffs and Nationwide Class members to recover out-of-pocket costs incurred in attempting to rectify and mitigate the effects of the Engine Defect in their Class Vehicles

### COUNT II: UNJUST ENRICHMENT
### (On Behalf of the Nationwide Class or,
### Alternatively, on Behalf of each of the Classes)

220.    Plaintiffs incorporate by reference every allegation set forth in preceding paragraphs as if fully stated herein.

221.    Plaintiffs bring this claim on behalf of themselves and the Nationwide Class under the common law of unjust enrichment, which is materially uniform in all states. In the alternative, Plaintiffs bring this claim on behalf of each of the Classes under the laws of each state in which Plaintiffs and Class members purchased or leased the Class Vehicles.

222.    Defendant designed, manufactured, produced, distributed, marketed, and/or sold the Class Vehicles during the relevant period herein.

223.    Plaintiffs and members of the Classes conferred non-gratuitous benefits upon Defendant, without knowledge that the Class Vehicles contained the Engine Defect.

224.    Defendant appreciated, or had knowledge of, the non-gratuitous benefits conferred

upon them by Plaintiffs and members of the Classes.

225.     Defendant accepted or retained the non-gratuitous benefits conferred by Plaintiffs and members of the Classes, with full knowledge and awareness that, as a result of Defendant's unconscionable wrongdoing, Plaintiffs and members of the Classes were not receiving products of high quality, nature, fitness, or value that had been represented by Defendant and reasonable consumers would have expected.

226.     Retaining the non-gratuitous benefits conferred upon Defendant by Plaintiffs and members of the Classes under these circumstances made Defendant's retention of the non-gratuitous benefits unjust and inequitable.

227.     Because Defendant's retention of the non-gratuitous benefits conferred by Plaintiffs and members of the Classes is unjust and inequitable, Plaintiffs and members of the Classes are entitled to, and hereby seek, disgorgement and restitution of Defendant's wrongful profits, revenue, and benefits in a manner established by the Court.

### COUNT III: FRAUDULENT CONCEALMENT
### (On Behalf of the Nationwide Class or,
### Alternatively, on Behalf of each of the Classes)

228.     Plaintiffs incorporate by reference every allegation set forth in preceding paragraphs as if fully stated herein.

229.     Plaintiffs bring this claim on behalf of themselves and the Nationwide Class under the common law of fraudulent concealment, which is materially uniform in all states. In the alternative, Plaintiffs bring this claim on behalf of each of the Classes under the laws of each state in which Plaintiffs and Class members purchased or leased the Class Vehicles.

230.     Honda fraudulently concealed and suppressed material facts concerning the quality of the Class Vehicles and the existence of the Defect.

231.    Despite advertising the Class Vehicles as safe, reliable, and being of high quality, Honda knew when it manufactured, marketed, and sold or leased the Class Vehicles that the Class Vehicles suffered from a design and/or manufacturing defect that reduced the Class Vehicles' value and subjected the Class Vehicles to the risk of stalling while driving and that rendered the Class Vehicles unreliable and posed significant safety hazards to drivers.

232.    Honda failed to disclose these facts to consumers at the time it manufactured, marketed, and sold or leased the Class Vehicles, and Honda knowingly and intentionally engaged in this concealment in order to boost sales and revenue, maintain its competitive edge in the automobile market, and obtain windfall profits. Through its active concealment and/or suppression of these material facts, Honda sought to increase consumer confidence in the Class Vehicles, and to falsely assure purchasers and lessors of the same that the Vehicles were of sound quality and that Honda was a reputable manufacturer that stands behind the automobiles it manufactures. Honda engaged in this behavior to protect its profits, avoid warranty replacements, avoid recalls that would impair the brand's image, cost it money, and undermine its competitiveness in the automobile industry.

233.    Plaintiffs and Class members were unaware, and could not reasonably discover on their own, that Honda's representations were false and misleading, or that it had omitted material facts relating to the Class Vehicles.

234.    Honda had a duty to disclose, rather than conceal and suppress, the full scope and extent of the Defect because:

        (a)    Honda had exclusive or far superior knowledge of the Defect and concealment thereof;

        (b)    the facts regarding the Defect and concealment thereof were known and/or accessible only to Honda;

        (c)    Honda knew that Plaintiffs and Class members did not

know about, or could not reasonably discover, the Defect and concealment thereof; and

(d)     Honda made representations and assurances about the qualities of the Class Vehicles, and about the existence of a repair for the Defect that were misleading, deceptive, and incomplete without the disclosure of the fact that the Class Vehicles suffered from a latent and inherent design and/or manufacturing defect.

235.     These omitted and concealed facts were material because a reasonable consumer would rely on them in deciding to purchase or lease the Class Vehicles, and because they substantially reduced the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Whether the Class Vehicles were defective, of sound quality, safe, reliable, and whether Honda stood behind such Vehicles would have been an important factor in Plaintiffs' and the Class members' decisions to purchase or lease the Vehicles. Plaintiffs and Class members trusted Honda not to sell them vehicles that were defective and significantly overpriced.

236.     Honda intentionally and actively concealed and suppressed these material facts to falsely assure consumers that their Class Vehicles were free from known defects, as represented by Honda and reasonably expected by consumers.

237.     Plaintiffs and Class members were unaware of these omitted material facts and would have paid less for the Class Vehicles, or would not have purchased/leased them at all, if they had known of the concealed and suppressed facts. Plaintiffs and Class members did not receive the benefit of their bargain due to Honda's fraudulent concealment. Plaintiffs' and Class members' actions in purchasing the Class Vehicles were justified. Honda was in exclusive control of the material facts, and such facts were not known or reasonably knowable to the public, Plaintiffs, or Class members.

238.     Plaintiffs and Class members relied to their detriment upon Honda's reputation, fraudulent misrepresentations, and material omissions regarding the quality, safety, and reliability

79

of the Class Vehicles.

239.     As a direct and proximate result of Honda's deceit and fraudulent concealment, including its intentional suppression of true facts, Plaintiffs and Class members suffered injury. They purchased and leased Class Vehicles that had a diminished value by reason of Honda's concealment of, and failure to disclose, the Defect. Plaintiff Phelps and other Class members also paid substantial money to (unsuccessfully) repair the Defect.

240.     Accordingly, Honda is liable to the Nationwide Class and/or Classes for their damages in an amount to be proven at trial.

241.     On information and belief, Honda has still not made full and adequate disclosure and continues to defraud Plaintiffs and Class members. Honda also continues to conceal material information regarding the Defect.

242.     Honda's acts were done deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Class members' rights. Honda's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

### COUNT IV: BREACH OF EXPRESS WARRANTY
### (On Behalf of the Nationwide Class)

243.     Plaintiffs incorporate by reference each allegation set forth in preceding paragraphs as if fully stated herein.

244.     Plaintiffs bring this claim on behalf of themselves and the Nationwide Class for breach of express warranty pursuant to the Uniform Commercial Code ("UCC") § 2-313.

245.     Defendant is a "merchant," a "seller," and "lessor" of motor vehicles under the UCC.

246.     The Class Vehicles are "goods" within the meaning of the UCC.

247.     Honda provided all purchasers and lessees of the Class Vehicles with the express warranties described herein. In its written express warranties, Honda warranted that the Class Vehicles were of high quality and, at a minimum, would actually work properly. Honda also expressly warranted that it would repair and/or replace defects in material and/or workmanship free of charge that occurred during the warranty periods.

248.     Defendant's written express warranties formed the basis of the bargain that was reached when Plaintiffs and other Class members purchased or leased their Class Vehicles.

249.     Defendant breached the express warranties through the acts and omissions described above.

250.     To the extent required, Plaintiffs and other Class members have had sufficient direct dealings with either Defendant or its agents (*e.g.*, dealerships, consumer affairs departments, and technical support) to establish privity of contract between Defendant on one hand, and Plaintiffs and each of the other Class members on the other hand. Nonetheless, privity is not required here because Plaintiffs and each of the other Class members are intended third-party beneficiaries of contracts between Defendant and their dealers, and specifically, of Defendant's express warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumers only. Additionally, privity is excused here because Plaintiffs and each of the other Class members relied on statements made by Defendant itself in choosing to purchase or lease a Class Vehicle. As alleged herein, the marketing of the Class Vehicles was uniform and was controlled and disseminated directly by Defendant.

251.     Honda knew that it was unable to provide adequate remedy under the warranty. Honda was also provided notice of the Engine Defect through numerous complaints filed against

it directly and through its dealers, as well as its own internal engineering knowledge. Honda has not remedied its breach.

252. Further, Defendant has refused to provide an adequate warranty repair for the Engine Defect, thus rendering the satisfaction of any notice requirement futile. As stated above, customers that have presented their vehicles for warranty repair due to the Engine Defect have been denied adequate repairs and/or replacements.

253. The written express warranties fail in their essential purpose because the contractual remedy is insufficient to make Plaintiffs and other Class members whole and because Honda has failed and/or has refused to adequately provide effective remedies within a reasonable time.

254. Accordingly, recovery by Plaintiffs and other Class members is not limited to the limited remedy of repair, and Plaintiffs, individually and on behalf of the other Class members, seek all remedies as allowed by law.

255. Also, as alleged in more detail herein, at the time that Honda warranted and sold or leased the Class Vehicles, it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and Defendant improperly concealed material facts regarding its Class Vehicles. Plaintiffs and other Class members were therefore induced to purchase or lease the Class Vehicles under false pretenses.

256. Defendant has actual knowledge of the Engine Defect and notice of its breach as alleged herein. Plaintiffs, individually and on behalf of the Classes, also notified Honda of the Engine Defect and the breach of warranty alleged herein through a notice letter, dated October 18, 2022.

257. As a direct and proximate result of Honda's breach of its express warranty, Plaintiff and other Class members have been damaged in an amount to be determined at trial.

258.     Plaintiffs, on behalf of themselves and the Class, seek monetary damages, treble damages, costs, attorneys' fees, and such other and further relief provided by law and equity.

## COUNT V: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (On Behalf of the Nationwide Class)

259.     Plaintiffs incorporate by reference every allegation set forth in preceding paragraphs as if fully stated herein.

260.     Plaintiffs bring this claim on behalf of themselves and the Nationwide Class for breach of implied warranty pursuant to UCC § 2-314.

261.     Defendant is a "merchant," a "seller," and "lessor" of motor vehicles under the UCC.

262.     Defendant was, at all relevant times, the manufacturer, distributor, warrantor, seller and/or lessor of the Class Vehicles. Defendant knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

263.     Honda impliedly warranted that the Class Vehicles and any parts thereof are of merchantable quality and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Class Vehicles are safe and reliable for providing transportation and would not result in the premature wear and eventual failure of its engine. However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles suffered from the Engine Defect at the time of sale that creates the undue risk of engine failure and stalling while driving. Therefore, the Class Vehicles are not fit for their particular purpose of providing safe and reliable transportation.

264.     Contrary to the applicable implied warranties, the Class Vehicles at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and other

Class members with reliable, durable, and safe transportation. Instead, the Class Vehicles suffer from a defective design(s) and/or manufacturing defect(s).

265. Defendant had actual knowledge of the Engine Defect, and wrongfully and fraudulently concealed these material facts from Plaintiffs and the Class. Defendant was provided notice of these issues through, *inter alia*, warranty claims, its defect investigations, complaints posted on the internet, and complaints lodged by consumers with the NHTSA – which Defendant routinely monitors – before or within a reasonable amount of time after the allegations of the Defect became public. Plaintiffs, individually and on behalf of the Classes, also notified Honda of the Engine Defect and the breach of warranty alleged herein through a notice letter, dated October 18, 2022.

266. Honda's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use.

267. Plaintiffs and other Class members have had sufficient direct dealings with either Defendant or its agents – such as its dealerships, consumer affairs departments, and technical support – to establish privity of contract between Defendant on one hand, and Plaintiffs and each of the other Class members on the other hand. Nonetheless, privity is not required here because Plaintiffs and each of the other Class members are intended third-party beneficiaries of contracts between Defendant and their dealers, and specifically, of Defendant's implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumers only. Additionally, privity is excused here because Plaintiffs and each of the other Class members relied on statements made by Defendant itself in choosing to purchase or lease a Class Vehicle. As alleged herein, the marketing of the

Class Vehicles was uniform, and was controlled and disseminated directly by Defendant.

268.     Plaintiffs, on behalf of themselves and the Class, seek monetary damages, treble damages, costs, attorneys' fees, and such other and further relief provided by law and equity.

## COUNT VI:
### VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT
### (815 ILL. COMP. STAT. 505/1 *et seq.*)
### (On Behalf of the Illinois Class)

269.     Plaintiffs incorporate by reference every allegation set forth in preceding paragraphs as if fully stated herein.

270.     Plaintiff Wolf brings this claim individually and on behalf of the other members of the Illinois Class.

271.     The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits unfair or deceptive acts or practices in connection with any trade or commerce, "including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . whether any person has in fact been misled, deceived or damaged thereby." 815 ILL. COMP. STAT. 505/2. The Illinois CFA also prohibits suppliers from representing that their goods are of a particular quality or grade they are not.

272.     Honda is a "person" as that term is defined in 815 ILL. COMP. STAT. 505/1(c).

273.     Plaintiff Wolf and the Illinois Class are "consumers" as that term is defined in 815 ILL. COMP. STAT. 505/1(e).

274.     As alleged more fully herein, Honda has violated Illinois' prohibition on unfair conduct because its acts, omissions, policies, and course of conduct: (a) offend public policy;

(b) are immoral, unethical, oppressive, and unscrupulous; and (c) cause substantial injury to consumers in violation of the Illinois CFA. *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417 (2002). Its unfair business practices include failing to disclose, at the point of sale or otherwise, that the Class Vehicles contain the Engine Defect and pose a safety hazard.

275.    Honda has also violated the Illinois CFA's prohibition on deceptive conduct in that it used unconscionable business practices by failing to disclose to Plaintiff Wolf and other members of the Illinois Class, in its public statements touting the safety of the Class Vehicles including at the point of sale, that the Class Vehicles contain the Engine Defect.

276.    As a direct and proximate result of Honda's failure to disclose the Defect, Plaintiff Wolf and other members of the Illinois Class have been harmed in that they purchased Class Vehicles they otherwise would not have; paid more for Class Vehicles than they otherwise would have; and are left with Class Vehicles of diminished value and utility because of the Defect. Meanwhile, Honda has sold more Class Vehicles than it otherwise could have and charged inflated prices for Class Vehicles, unjustly enriching itself thereby.

277.    Plaintiff Wolf seeks damages and appropriate equitable relief, including an Order requiring Honda to adequately disclose and repair the Defect, and an Order enjoining Honda from incorporating the Defect into its vehicles in the future.

278.    Based on the foregoing, Plaintiff Wolf and the Illinois Class are entitled to all remedies available pursuant to the Illinois CFA, including refunds, actual damages, liquidated damages, punitive damages, attorneys' fees, and other reasonable costs. Plaintiff Wolf and the Illinois Class also request that the Court award equitable relief, including an Order requiring Honda to adequately disclose and repair the Defect and an Order enjoining Honda from incorporating the Defect into its vehicles in the future.

### COUNT VII: BREACH OF EXPRESS WARRANTY
### (810 ILL. COMP. STAT. 5/2-313, 810 ILL. COMP. STAT. 5/2A-210)
### (On Behalf of the Illinois Class)

279.     Plaintiffs incorporate by reference every allegation set forth in preceding paragraphs as if fully stated herein.

280.     Plaintiff Wolf brings this claim individually and on behalf of the other members of the Illinois Class.

281.     Honda is a "merchant" (as defined by 810 ILL. COMP. STAT. 5/2-104(1)), a "seller" (as defined by 810 ILL. COMP. STAT. 5/2-103(1)(d)), and a "lessor" (as defined by 810 ILL. COMP. STAT. 5/2A-103(1)(p)) of Class Vehicles.

282.     The Class Vehicles are "goods" (as defined by 810 ILL. COMP. STAT. 5/2-105(1) and 810 ILL. COMP. STAT. 5/2A-103(h)).

283.     Pursuant to 810 ILL. COMP. STAT. 5/2-313(1)(a), "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."

284.     Pursuant to 810 ILL. COMP. STAT. 5/2A-210(1)(a), "[a]ny affirmation of fact or promise made by the lessor to the lessee which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods will conform to the affirmation or promise."

285.     In its written express warranties, Honda expressly warranted that it would repair or replace defective parts free of charge if the defects became apparent during the warranty period.

286.     Honda's written express warranties formed the basis of the bargain that was reached when Plaintiff Wolf and other Illinois Class members purchased or leased their Class Vehicles.

287.    Honda breached its express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing Plaintiff Wolf and Illinois Class members with Class Vehicles containing a Defect that was never disclosed to Plaintiff Wolf and Illinois Class; (b) failing to repair or replace the Class Vehicles at no cost within the warranty periods; and (c) supplying products and materials that failed to conform to the representations made by Honda.

288.    Plaintiff Wolf and the Illinois Class members have given Honda a reasonable opportunity to cure its breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Honda can neither cure the Defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

289.    The written express warranties fail in their essential purpose because the contractual remedy is insufficient to make Plaintiff Wolf and other Illinois Class members whole and because Honda has failed and/or has refused to adequately provide effective remedies within a reasonable time.

290.    Accordingly, recovery by Plaintiff Wolf and other Illinois Class members is not limited to the limited remedy of repair, and Plaintiff Wolf, individually and on behalf of the other Illinois Class members, seeks all remedies as allowed by law.

291.    Also, as alleged in more detail herein, at the time that Honda warranted and sold or leased the Class Vehicles, it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and Honda improperly concealed material facts regarding its Class Vehicles. Plaintiff Wolf and other Illinois Class members were therefore induced to purchase or lease the Class Vehicles under false pretenses.

292.    Honda had notice of its breach as alleged herein.

293. As a direct and proximate result of Honda's breach of its express warranty, Plaintiff Wolf and other Illinois Class members have been damaged in an amount to be determined at trial.

## COUNT VIII: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## (810 ILL. COMP. STAT. 5/2-314, 810 ILL. COMP. STAT. 5/2A-212)
### (On Behalf of the Illinois Class)

294. Plaintiffs incorporate by reference every allegation set forth in preceding paragraphs as if fully stated herein.

295. Plaintiff Wolf brings this claim individually and on behalf of the other members of the Illinois Class.

296. Honda is a "merchant" (as defined by 810 ILL. COMP. STAT. 5/2-104(1)), a "seller" (as defined by 810 ILL. COMP. STAT. 5/2-103(1)(d)), and a "lessor" (as defined by 810 ILL. COMP. STAT. 5/2A-103(1)(p)) of Class Vehicles.

297. The Class Vehicles are "goods" (as defined by 810 ILL. COMP. STAT. 5/2-105(1) and 810 ILL. COMP. STAT. 5/2A-103(h)).

298. Pursuant to 810 ILL. COMP. STAT. 5/2-314(1), "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."

299. Pursuant to 810 ILL. COMP. STAT. 5/2A-212(1), "a warranty that the goods will be merchantable is implied in a lease contract if the lessor is a merchant with respect to goods of that kind."

300. Goods are merchantable if they are "fit for the ordinary purposes for which such goods are used" and "conform to the promises or affirmations of fact made on the container or label if any." 810 ILL. COMP. STAT. 5/2-314(2)(c), (f); 810 ILL. COMP. STAT. 5/2A-212(2)(c), (f).

301. Defendant was, at all relevant times, the manufacturer, distributor, warrantor,

and/or seller of the Class Vehicles. Defendant knew or had reason to know of the specific use for which the Class Vehicles were purchased.

302.     Defendant provided Plaintiff Wolf and the Illinois Class members with an implied warranty that the Class Vehicles and any parts thereof are merchantable and fit for the ordinary purposes for which they were sold. However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles suffered from the Engine Defect at the time of sale that creates the undue risk of the engine stalling while driving. Therefore, the Class Vehicles are not fit for their particular purpose of providing safe and reliable transportation.

303.     Defendant impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things, a warranty that the Class Vehicles were manufactured, supplied, distributed, and/or sold by Defendant, were safe and reliable for providing transportation, and would not result in the vehicles stalling in the middle of traffic.

304.     Contrary to the applicable implied warranties, the Class Vehicles at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and other Class members with reliable, durable, and safe transportation. Instead, the Class Vehicles suffer from a defective design(s) and/or manufacturing defect(s).

305.     Defendant had actual knowledge of the Engine Defect of these material facts, and wrongfully and fraudulently concealed these material facts from Plaintiffs and the Class. Defendant was provided notice of these issues through, *inter alia*, warranty claims, its defect investigations, complaints posted on the internet, and complaints lodged by consumers with the NHTSA – which Defendant routinely monitors – before or within a reasonable amount of time

after the allegations of the Defect became public. Plaintiffs, individually and on behalf of the Classes, also notified Honda of the Engine Defect and the breach of warranty alleged herein through a notice letter, dated October 18, 2022.

306. Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use.

307. Plaintiff Wolf and the Illinois Class members have had sufficient direct dealings with either Defendant or its agents (*e.g.*, dealerships, consumer affairs departments, and technical support) to establish privity of contract between Defendant on one hand, and Plaintiffs and each of the other Class members on the other hand. Nonetheless, privity is not required here because Plaintiffs and each of the other Class members are intended third-party beneficiaries of contracts between Defendant and their dealers, and specifically, of Defendant's implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumers only. Defendant was also aware that the ultimate consumers of the Class Vehicles (*i.e.*, the Class) required vehicles that would function safely, could be relied upon, and otherwise meet minimum industry standards. Additionally, privity is excused here because Plaintiffs and each of the other Class members relied on statements made by Defendant itself in choosing to purchase or lease a Class Vehicle. As alleged herein, the marketing of the Class Vehicles was uniform, and was controlled and disseminated directly by Defendant.

308. Plaintiff Wolf, on behalf of himself and the Illinois Class, seeks monetary damages, treble damages, costs, attorneys' fees, and such other and further relief provided by law and equity.

**COUNT IX:**
**VIOLATION OF THE MINNESOTA PREVENTION OF CONSUMER FRAUD ACT**
**(MINN. STAT. § 325F.68-70)**
**(On Behalf of the Minnesota Class)**

309.     Plaintiffs incorporate by reference every allegation set forth in preceding paragraphs as if fully stated herein.

310.     Plaintiff Phelps brings this claim individually and on behalf of the other members of the Minnesota Class.

311.     Pursuant to the MPCFA, "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby" is unlawful. MINN. STAT. § 325F.69(1). Minnesota law permits "any person injured by a violation of [the MPCFA to] bring a civil action and recover damages, together with costs and disbursements, including costs of investigation and reasonable attorneys' fees, and receive other equitable relief as determined by the court." MINN. STAT. § 8.31(3a).

312.     Defendant is a "person" as that term is defined by the Minnesota Prevention of Consumer Fraud Act ("MPCFA"), MINN. STAT. § 325F.68(3).

313.     Plaintiff Phelps and members of the Minnesota Class are each "persons" as defined by MINN. STAT. § 325F.68(3).

314.     The Class Vehicles sold and/or leased to Plaintiff Phelps and the Minnesota Class are "Merchandise" as defined by MINN. STAT. § 325F.68(2).

315.     Honda's actions, as complained of herein, constitute unconscionable deceptive, misleading, or fraudulent acts in violation of the MPCFA. Specifically, Honda knowingly and intentionally omitted from Plaintiff Phelps and Minnesota Class members that the Class Vehicles

suffer from the Engine Defect (and the costs, risks, and diminished value of the vehicles as a result of this problem) in order to sell the Class Vehicles at a premium price.

316.    Honda intended that Plaintiff Phelps and the Minnesota Class members would rely on its omissions and concealments in order to purchase the Class Vehicles.

317.    Honda further misled Plaintiff Phelps and Minnesota Class members by failing to admit that the Defect is an inherent consequence of a manufacturing and/or material defect present in the Class Vehicles since inception. Instead, Honda explains the Defect as common vehicle wear, requiring Class members to pay out of pocket for more frequent oil changes and engine repairs necessitated by Honda's defective product.

318.    Deceptive acts or practices that are proscribed by law include: representing that the Class Vehicles have characteristics, components, uses, benefits, or qualities they do not have; representing that the Class Vehicles are of a particular standard and/or suitable for their intended use when they are not; and advertising the Class Vehicles with the intent not to sell them as advertised.

319.    As a result, Plaintiff Phelps and the Minnesota Class members purchased and/or leased Class Vehicles and suffered ascertainable losses, including monetary losses and receiving less than what was promised by Honda.

320.    Honda has a statutory duty to refrain from fraudulent, deceptive, and misleading acts in the design, manufacture, testing, marketing, distribution, and/or sale of the Class Vehicles.

321.    Had the Engine Defect been disclosed, Plaintiff Phelps would not have paid for the Class Vehicle or would have paid less had she decided to purchase it.

322.    By reason of the unlawful acts engaged in by Honda, and as a direct and proximate result thereof, Plaintiff Phelps and the Minnesota Class suffered ascertainable losses and damages

so as to warrant the imposition of damages and other relief as provided under the MPCFA.

## COUNT X: BREACH OF EXPRESS WARRANTY
### (MINN. STAT. § 336.2-313)
### (On Behalf of the Minnesota Class)

323. Plaintiffs incorporate by reference every allegation set forth in preceding paragraphs as if fully stated herein.

324. Plaintiff Phelps brings this claim individually and on behalf of the other members of the Minnesota Class.

325. Honda is a "seller" (as defined by MINN. STAT. § 336.2-103(d)) of Class Vehicles.

326. Plaintiff Phelps and the Minnesota Class members are "buyer[s]" (as defined by MINN. STAT. § 336.2-103(a)) of Class Vehicles.

327. The Class Vehicles are "goods" (as defined by MINN. STAT. § 336.2-105(1)).

328. Pursuant to MINN. STAT. § 336.2-313(1)(a), "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."

329. In its written express warranties, Honda expressly warranted that it would repair or replace defective parts free of charge if the defects became apparent during the warranty period.

330. Honda's written express warranties formed the basis of the bargain that was reached when Plaintiffs and other Class members purchased or leased their Class Vehicles.

331. Honda breached its express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing Plaintiff Phelps and other Minnesota Class members with Class Vehicles containing a Defect that was never disclosed to Plaintiff Phelps and other Minnesota Class members; (b) failing to repair or replace the Class Vehicles at no cost within the warranty periods; and (c) supplying products and materials that failed to conform to the

94

representations made by Honda.

332. Plaintiffs and Class members have given Honda a reasonable opportunity to cure its breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Honda can neither cure the Defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

333. The written express warranties fail in their essential purpose because the contractual remedy is insufficient to make Plaintiff Phelps and other Minnesota Class members whole and because Honda has failed and/or has refused to adequately provide effective remedies within a reasonable time.

334. Accordingly, recovery by Plaintiff Phelps and other Minnesota Class members is not limited to the limited remedy of repair, and Plaintiff Phelps, individually and on behalf of the other Minnesota Class members, seek all remedies as allowed by law.

335. Also, as alleged in more detail herein, at the time that Honda warranted and sold or leased the Class Vehicles, it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and Honda improperly concealed material facts regarding its Class Vehicles. Plaintiff Phelps and other Minnesota Class members were therefore induced to purchase or lease the Class Vehicles under false pretenses.

336. Honda had notice of its breach as alleged herein.

337. As a direct and proximate result of Honda's breach of its express warranty, Plaintiff Phelps and other Minnesota Class members have been damaged in an amount to be determined at trial.

## COUNT XI: BREACH OF IMPLIED WARRANTY OF MERCHANTIBILITY
## (MINN. STAT. § 336.2-314)
### (On Behalf of the Minnesota Class)

338.     Plaintiffs incorporate by reference every allegation set forth in preceding paragraphs as if fully stated herein.

339.     Plaintiff Phelps brings this claim individually and on behalf of the other members of the Minnesota Class.

340.     Honda is a "merchant" (as defined by MINN. STAT. § 336.2-104(1)) and a "seller" (as defined by MINN. STAT. §336.2-103(d)) of Class Vehicles.

341.     The Class Vehicles are "goods" (as defined by MINN. STAT. § 336.2-105(1)).

342.     Pursuant to MINN. STAT. § 336.2-314(1), "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."

343.     Goods are merchantable if they are "fit for the ordinary purposes for which such goods are used" and "conform to the promises or affirmations of fact made on the container or label if any." MINN. STAT. § 336.2-314(2).

344.     Defendant was, at all relevant times, the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles. Defendant knew or had reason to know of the specific use for which the Class Vehicles were purchased.

345.     Defendant provided Plaintiff Phelps and other Minnesota Class members with an implied warranty that the Class Vehicles and any parts thereof are merchantable and fit for the ordinary purposes for which they were sold. However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles suffered from the Engine Defect at the time of

sale that creates the undue risk of the engine stalling while driving. Therefore, the Class Vehicles are not fit for their particular purpose of providing safe and reliable transportation.

346.     Defendant impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things, a warranty that the Class Vehicles were manufactured, supplied, distributed, and/or sold by Defendant, were safe and reliable for providing transportation, and would not result in the vehicles stalling in the middle of traffic.

347.     Contrary to the applicable implied warranties, the Class Vehicles at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff Phelps and other Minnesota Class members with reliable, durable, and safe transportation. Instead, the Class Vehicles suffer from a defective design(s) and/or manufacturing defect(s).

348.     Defendant had actual knowledge of the Engine Defect of these material facts, and wrongfully and fraudulently concealed these material facts from Plaintiff Phelps and other Minnesota Class members. Defendant was provided notice of these issues through, *inter alia*, warranty claims, its defect investigations, complaints posted on the internet, and complaints lodged by consumers with the NHTSA – which Defendant routinely monitors – before or within a reasonable amount of time after the allegations of the Defect became public. Plaintiffs, individually and on behalf of the Classes, also notified Honda of the Engine Defect and the breach of warranty alleged herein through a notice letter, dated October 18, 2022.

349.     Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use.

350.     Defendant's implied warranty extends to Plaintiff Phelps and members of the Minnesota Class as a "person who may reasonably be expected to use, consume or be affected by

the goods and who is injured by the breach of the warranty." MINN. STAT. § 336.2- 318.

351. Plaintiff Phelps and other members of the Minnesota Class have had sufficient direct dealings with either Defendant or its agents (*e.g.*, dealerships, consumer affairs departments, and technical support) to establish privity of contract between Defendant on one hand, and Plaintiffs and each of the other Class members on the other hand. Nonetheless, privity is not required here because Plaintiff Phelps and each of the other Class members are intended third-party beneficiaries of contracts between Defendant and their dealers, and specifically, of Defendant's implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumers only. Defendant was also aware that the ultimate consumers of the Class Vehicles (*i.e.*, the Class) required vehicles that would function safely, could be relied upon, and otherwise meet minimum industry standards. Additionally, privity is excused here because Plaintiff Phelps and each of the other Minnesota Class members relied on statements made by Defendant itself in choosing to purchase or lease a Class Vehicle. As alleged herein, the marketing of the Class Vehicles was uniform, and was controlled and disseminated directly by Defendant.

352. Plaintiff Phelps, on behalf of herself and the Minnesota Class, seeks monetary damages, costs, attorneys' fees, and such other and further relief provided by law and equity.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of members of the Classes, respectfully requests that this Court:

A. Issue an Order certifying this action as a class action pursuant to Rule 23 of the Federal Rules Of Civil Procedure; declaring that Plaintiffs are proper Class representatives; and appointing Plaintiffs' counsel as Class Counsel;

B. Award Plaintiffs and Class members damages, restitution, and disgorgement in an amount to be determined at trial;

C. Order appropriate injunctive and/or declaratory relief, including, but not limited to, an Order that requires Honda to repair, recall, and/or replace the Class Vehicles and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiffs and Class members with appropriate curative notice regarding the existence and cause of the Defect;

D. Award Plaintiffs the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses;

E. Award pre- and post-judgment interest at the maximum legal rate; and

F. Grant such other and further relief as this Court deems appropriate.

## IX. DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all claims so triable.

Dated: October 24, 2022

Respectfully submitted,

*/s/ Elizabeth A. Fegan*
Elizabeth A. Fegan
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
Ph: 312.741.1019
Fax: 312.264.0100
beth@feganscott.com

Jonathan D. Lindenfeld
(*Pro Hac Vice* to be filed)
Brooke A. Achua
(*Pro Hac Vice* to be filed)
FEGAN SCOTT LLC
140 Broadway, 46th Floor
New York, NY 10005
Ph: 332.216.2101
Fax: 917.725.9346
jonathan@feganscott.com

brooke@feganscott.com

David Freydin
LAW OFFICES OF DAVID FREYDIN
8707 Skokie Blvd # 312
Skokie, IL 60077
Ph: 312.544.0365
Fax: 866.575.3765
david.freydin@freydinlaw.com

J. Barton Goplerud
SHINDLER, ANDERSON, GOPLERUD
& WEESE, PC
5015 Grand Ridge Drive, Suite 100
West Des Moines, IA  50265
Ph: 515.223.4567
Fax: 515.223.8887
goplerud@sagwlaw.com

*Attorneys for Plaintiffs and the Proposed
Classes*